**Ezekiel MILLER et al., Plaintiffs,**

v.

**MIAMI PREFABRICATORS, INC., et al., Defendants.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**LENNAR CORPORATION et al., Defendants.**

**Nos. 75–2177–Civ–SMA, 76–758–Civ–SMA.**

United States District Court, S. D. Florida.

Sept. 9, 1977.

---

Roger J. Schindler, Miami, Fla., Roger J. Martinson, EEOC, Atlanta, Ga., for plaintiffs.

Charles Kelso, Atlanta, Ga., Joseph H. Kaplan, Miami, Fla., for defendants.

MEMORANDUM OPINION

ARONOVITZ, District Judge.

The parties have requested a pretrial ruling in this cause, pursuant to Rule 16, Federal Rules of Civil Procedure, to facilitate discovery and pretrial preparation, as well as to assist the parties in their efforts to settle this litigation. The main controversy concerns the correct application of Section 706(d), 42 U.S.C. § 2000e–5(e) and Section 706(g), 42 U.S.C. § 2000e–5(g) to the relief available to the Plaintiffs, assuming that a violation of Title VII [1] can be shown at trial.

The Plaintiffs in Case No. 75–2177 are nineteen (19) individual black employees who were employed by the Defendant employer, Miami Prefabricators, Inc. (hereinafter referred to as "PREFAB"). The Defendants, Carpenters District Council and Local 1554 (hereinafter referred to collectively as "UNIONS"), represented the Plaintiff employees. While Case No. 75–2177 is not a class action, all nineteen (19) Plaintiffs having filed charges with the EEOC, the companion case is an action brought by the EEOC on behalf of other black employees of PREFAB.

PREFAB was engaged in the manufacture of trusses used in the construction of buildings, primarily single family and multi-family dwellings.[2] Since a single family dwelling usually requires several trusses of identical proportions, and since a truss built to standard dimensions may be used in many different buildings, trusses are built to a given standard size and shape. To some degree, therefore, the actual fabrication of trusses is repetitious and involves placing the precut lumber in a predesigned jig and producing from one to hundreds of identical trusses.

Considered horizontally, PREFAB is divided into two main functions to accomplish its truss building task.[3] Fork lift drivers and truck drivers are employed to physically move the raw materials (mostly lumber) from the delivery area to the storage area; from storage to the saw area for precutting; and from the saw area to the jig. As the individual trusses are completed, they are taken from the fabrication point by fork lift drivers to the loading area for delivery to the job site.

The actual fabrication of trusses is accomplished by carpenters and material handlers, whose main function is to place the precut lumber on the jig and fasten the lumber together, thereby creating the truss. Although the difference, if any, between the function of the material handler and the carpenter at PREFAB is in sharp dispute, it is undisputed that carpenters were paid higher wages than were material handlers. The gravaman of the Plaintiffs' Complaints is that at PREFAB all carpenters were white, and material handlers were overwhelmingly black.

The Plaintiffs assert that blacks simply never moved higher on the horizontal scale at PREFAB than the very bottom rung:

1. 42 U.S.C. § 2000e *et seq.*

2. PREFAB closed its plant on February 20, 1976, after this litigation was commenced. The parties, therefore, are primarily concerned with the availability of back pay, as opposed to other, prospective relief.

3. This opinion deals primarily with the distinction between material handlers and carpenters. Other functions, i. e., that of sawyers (saw operators) and saw helpers, as well as fork lift drivers and truck drivers, are analogous to the situation which exists with regard to carpenters and material handlers. For the purposes of this Memorandum Opinion, therefore, similar legal issues are involved. Therefore, the legal issues can be determined with reference to, and based upon, the carpenter/material handler dichotomy.

blacks were material handlers, and whites were carpenters.

The Defendants, PREFAB and UNIONS, assert that, assuming that the Plaintiffs can prove their allegations at trial, the 180 day limitation contained in 42 U.S.C. § 2000e–5(e) forecloses consideration of any promotion occurring prior to August 9, 1972, for purposes of back pay. They assert that the recent decision by the Supreme Court in *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (decided May 31, 1977) and *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (decided May 31, 1977) mandate this result.

The Plaintiffs' Complaint asserts a broad pattern or practice of racial discrimination at PREFAB, which constituted a continuing violation of Title VII in several respects. They assert, for example, that some material handlers were doing the same or similar work as white carpenters, yet receiving lower pay. They also assert that promotions from material handler to carpenter were made by the all-white foremen, without regard to seniority or any other objective criteria; that blacks were never considered for these promotions; and that less qualified whites were promoted to the position of carpenter because of a policy at PREFAB designating higher paying carpenter jobs as "white only".[4] They also allege the existence of racial harassment, slurs, and other disparate treatment throughout their period of employment.

The question presented here is, given that the Plaintiffs' allegations are true, what restrictions are placed upon this Court's broad equitable powers to "make whole" the victims of racial discrimination at PREFAB by either the 180 day limitation contained in 42 U.S.C. § 2000e–5(e) or the two year cap on back pay contained in 42 U.S.C. § 2000e–5(g)?

■ The first charges of racial discrimination at PREFAB were filed with the EEOC on February 3, 1973.[5] It has been acknowledged by PREFAB that there was at least one carpenter "vacancy" within the 180 days prior to the Plaintiffs' charges being filed with the EEOC. It has also been acknowledged by PREFAB that there were approximately 12 openings within the two years prior to the charges being filed with the EEOC: February 3, 1971 through February 3, 1973, and additional vacancies between the effective date of Title VII and February 3, 1971, for an aggregate of more than 19 vacancies. If the position asserted by the Defendants, PREFAB and UNIONS is correct, this Court is foreclosed from considering any vacancies occurring prior to August, 1972 and their liability for back pay cannot exceed the amount of back pay accruing by virtue of any and all vacancies which occurred within 180 days of the Plaintiffs filing administrative charges with the EEOC forward to the closing of PREFAB. The Plaintiffs assert that all vacancies occurring after the effective date of Title VII, or July 2, 1965, may be considered by this Court in awarding back pay under the broad "make whole" principles of Title VII. For the reasons set forth in this Opinion, this Court is of the opinion that all vacancies occurring after July 2, 1965 may be considered for purposes of back pay relief.

First, it must be pointed out that Title VII is a bifurcated proceeding. Initially, this Court must determine whether a violation of Title VII has been demonstrated within 180 days of the filing of administrative charges with the EEOC. The failure of the private Plaintiffs to carry their burden of proof on this jurisdictional prerequisite would pretermit any consideration of the second, "remedy phase" of the proceeding. Although the recent Supreme Court decision in *Evans v. United Air Lines, supra,* reiterates the jurisdictional nature of

4. The allegations are almost identical to those raised in *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437 (5th Cir. 1974) cert. denied 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1975).

5. Although not all 19 charges were filed on that date, the parties have stipulated that that date may be used for purposes of this ruling, for purposes of simplicity.

the "violation phase" inquiry, that decision is not relevant to the "remedy phase" presented here.

*Evans* dealt, not with a continuing violation of Title VII by United Air Lines, but rather, with the application of a *bona fide* seniority system which, Ms. Evans asserted, "continued" to deny her seniority lost through her earlier illegal, but unchallenged, termination. The Supreme Court recognized that termination, like failure to hire, is not a continuing violation. See, e. g., *Olson v. Rembrandt Painting Co.*, 511 F.2d 1228 (8th Cir. 1975), *East v. Romine, Inc.*, 518 F.2d 332 (5th Cir. 1975). Since Ms. Evans failed to timely challenge her termination; she could not rely upon her termination to satisfy the burden of proof during the "violation phase". *Id.*, 97 S.Ct. 1888, n. 8.

In an effort to satisfy her burden of proof during the violation phase, Ms. Evans asserted that the seniority system of United Air Lines operated to deprive her of her seniority based upon her prior, unlawful dismissal. However, the Supreme Court held that the operation of a seniority system is not unlawful under Title VII, even though it perpetuates post-Act discrimination that has not been the subject of a timely charge by the discriminatee.[6]

Here, however, the charges by the Plaintiffs clearly allege a continuing violation of Title VII. The recent decision of the Fifth Circuit in *Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977)[7] is, therefore, applicable:

> "In the trial court, [the defendants] argued that the *failure to promote* does not constitute a continuing violation, relying heavily on cases holding that the *failure to hire* does not constitute a continuing violation. [Citations omitted]. As pointed out by the court, however, in *Rich v. Martin Marietta Corp.* [522 F.2d 333] . . . cases involving the failure to promote are distinguishable. The court in *Rich* commented as follows:
>
> > We finally must take up the factor of timing. The court found that in some instances there were no openings in positions for which the plaintiffs were qualified within the 90 days [now 180 days] prior to the filing of charges with the EEOC. The court apparently read *McDonnell-Douglas* [*v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] [citation omitted] as saying that if an employer has employed no one during the 90 days [now 180 days] preceding the filing of charges with the EEOC, it is impossible to have an unlawful employment practice committed with the time limitations of 42 U.S.C. § 2000e–5(e). This is in relation to the *McDonnell-Douglas* criterion requiring that plaintiff show that he applied for a job for which the employer was seeking applicants. *Clearly this applies to new employment and is different from an employee who is seeking promotion. The former takes place on a particular day, whereas in the promotion area it invariably arises during a lengthy period of time. Plaintiffs here challenge the entire promotion system maintaining that it continually operated so as to hold them in lower echelons. Hence, the 90 day period [now 180 days] prior to the filing of the EEOC charges looms inconsequential in this kind of case.* If proven, these charges of discriminatory refusal to promote would be violative of 42 U.S.C. § 2000e–5. . . .
>
> We are in accord with the views expressed in *Rich.* [Plaintiff's allegations, therefore, are sufficient to toll the running of the one hundred and eighty day

6. It must be pointed out that the Defendants have stipulated in this case that there was no seniority system in effect at PREFAB. Thus, the Supreme Court's decision in *Evans*, as well as its decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (decided May 31, 1977), is inapplicable here.

7. That decision was published after briefing and oral argument in this case, but adopts the discussion of continuing violations in the 10th Circuit's opinion in *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348, (10th Cir. 1975) upon which the Plaintiffs relied in their Memoranda and oral argument.

period; here the discrimination in promotion and pay continues." [Emphasis in the original].

*Clark v. Olinkraft, supra,* at 1222.

Secondly, it must be reiterated that the issue presented here is one of *remedy,* and all parties have stipulated, for the purposes of this decision, that the Plaintiffs will be able to satisfy their burden of proof during the earlier, violation phase. While the 180 day limitation is applicable to the latter, in the absence of a charge of continuing violation, it does not in any way constrict the Court's broad equitable powers during the former. Thus, the Defendants' reliance upon the recent District Court cases of *Swint v. Pullman Standard,* 15 FEP Cases 144 (N.D.Alaska, decided July 5, 1977) and *Croker v. Boeing Co.,* 437 F.Supp. 1138 (E.D.Pa., decided June 20, 1977) and *Cates v. Transworld Airlines,* 561 F.2d 1064 (2nd Cir. 1977) amply demonstrate this violation/remedy dichotomy. All three cases involve the Court's consideration of the violation issue. This reconsideration of the violation issue in *Swint v. Pullman Standard, supra,* was necessitated because the trial court had initially considered employment decisions made prior to 1965, since at that time "a violation of Title VII was considered proved by showing a seniority system which perpetuated the effects of discriminatory assignments which predated Title VII". *Id.* at 146. Obviously, the Plaintiffs could not rely on the application of the seniority system as a violation following the Supreme Court's decision in *Teamsters.* Since it was undisputed in the District Court, upon reconsideration, that *Pullman Standard* had abandoned its former policy of racial segregation and had actively attempted to get blacks into the formerly all-white jobs, after 1965, there simply was no violation of Title VII within the 180 day limitation. The Court, therefore, never reached the remedy issue.

Likewise, in *Croker v. Boeing Co.,* the Court specifically noted that "this opinion concerns only the issue of the Company's liability for employment discrimination under the statute". *Id.* at 1145. Likewise, the Second Circuit's opinion in *Cates v. Transworld Airlines, supra,* concerned the violation inquiry, and established that the application of a *bona fide* seniority system cannot, under *Evans,* result in a present violation of Title VII because of a refusal to hire that was "long since time barred". *Id.* at 1072.

The distinction between the "violation phase" and the "remedy phase" was specifically noted by the Supreme Court in *Evans,* and is amply demonstrated by comparing that decision with the Court's earlier consideration of the remedy phase in *Franks v. Bowman Transport,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1974).

As regards the application of 42 U.S.C. § 2000e–5(e) to the EEOC, the Defendants' attempt to raise that jurisdictional bar against the Equal Employment Opportunity Commission is foreclosed by the recent decision of the United States Supreme Court in *Occidental Life Insurance Company v. EEOC,* 432 U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

THE APPLICATION OF 42 U.S.C. § 2000e–5(g).

During the remedy phase, the availability of back pay to employees who have been denied promotional opportunities, paid lower wages, or otherwise discriminated against in employment for racial reasons, must begin with an examination of the broad powers granted to the trial courts under the Act. 42 U.S.C. § 2000e–5(g) provides:

> "If the court finds that the respondent (employer) has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment prac-

tice), or any other equitable relief as the court deems appropriate. *Back pay liability shall not accrue from a date more than two years prior to the filing of the charge with the Commission.*"

Initially, the Defendants argued that consideration of vacancies which existed after July 2, 1965, but more than two years prior to the filing of charges with the EEOC was foreclosed by the two year cap contained in 42 U.S.C. § 2000e–5(g). But the quoted Section, by its terms, does not limit the availability of back pay, but rather, limits the extent to which that singular remedy may be afforded in making whole the victims of racial discrimination.

Where a showing of racial discrimination has been made during the violation phase, a presumption in favor of the entitlement to a back pay award arises on behalf of each of the Plaintiffs. The award may be denied only for narrowly defined reasons which would not defeat the purposes of Title VII. The Supreme Court has stated that the primary purpose of Title VII is a prophylactic one:

> "It was [enacted] to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."

*Griggs v. Duke Power Co.*, 401 U.S. 424, 429–430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1975).

As the Supreme Court noted in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975):

> "Back pay has an obvious connection with this purpose. If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a back pay award that 'provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate, ignominious page in this country's history.' "

PREFAB's assertion that the general business decline in the housing industry, and its concomitant decline in the number of "vacancies" available for promotion purposes at PREFAB constitutes a valid defense to its liability for back pay would, if generally accepted, defeat rather than encourage the prophylactic effect of Title VII. A similar contention was rejected in *Sabala v. Western Gillette, Inc.*, 516 F.2d 1251, 1258 (5th Cir. 1975). There, the Fifth Circuit noted that "The general decline of a business with its concomitant effects on employment, of course, magnifies rather than lessens the need for strict compliance with the requirements of the federal civil rights acts."

The other purpose of Title VII, of course, is to "make whole" those employees who have suffered economically by reason of the employer's discrimination. During the remedy phase, this Court's duty is clear. "Under Title VII . . . the injured workers must be restored to the economic position in which they would have been *but for* the discrimination—'their rightful place' ". *Pettway v. American Cast Iron Pipe Co.*, 7 FEP Cases 1115, 1147 (5th Cir. 1974). As the Fifth Circuit has previously noted in *Johnson v. Goodyear Tire & Rubber Co.*, 7 FEP Cases 627, 635 (5th Cir. 1974), all equitable relief under Title VII "is intended to restore those wronged to their rightful economic status absent the effects of unlawful discrimination. As to monetary relief nothing more is required; nothing less is acceptable."

When measured against the broad "make whole" purposes of Title VII it becomes evident that the two year cap on back pay contained in 42 U.S.C. § 2000e–5(g) is not a statute of limitations. Rather, that provision was inserted by Congress in an attempt to limit the back pay which could be recovered from employers who have been engaged in discrimination for many years. Where the defendant has been engaged in such unlawful practices for such an extended period of time, the Court's duty in the "remedy" stage of the proceedings is clear. The court must deter-

mine what the Plaintiffs would have earned, as employees of PREFAB, "but for" PREFAB's unlawful racial discrimination. This determination must be made upon consideration of each employee's work history since 1965, and the "vacancies existing in traditionally white jobs during the claimant's period of employment." *English v. Seaboard Coastline Railroad Co.*, 12 FEP Cases 90, 93 (S.D.Ga.1975). Only after the trial court has determined what each employee's "rightful place" is, as well as the amount of economic injury visited upon that Plaintiff by virtue of having been denied promotions subsequent to July 2, 1965, can the two year "cap" on back pay provided in 42 U.S.C. § 2000e–5(g) be applied. As the Fifth Circuit has stated, "[a]t least since July 2, 1965, the effective date of Title VII, the employers of this nation have been on notice that employment discrimination based on race, whether overt, covert, simple or complex, is illegal. . . . Title VII is strong medicine and we refuse to vitiate its potency by glossing it with judicial limitations unwarranted by the strong remedial spirit of the Act." *Johnson v. Goodyear Tire & Rubber Co., supra.* As to post-1965 vacancies, then, "liability exists . . . for practices occurring after the effective date of the Act . . . and accrues only from a date two years prior to the filing of charges with the EEOC". *Albemarle Paper Co. v. Moody, supra,* at 1184 n. 3, 95 S.Ct. at 2368. As to employees who would have been promoted, absent racial discrimination, after February 3, 1971, back pay accrues from the date that they would have been promoted, but for the existence of racial discrimination at PREFAB, and continues thereafter.

Although the parties have requested a ruling as to which "vacancies" may be litigated in determining the potential back pay liability of the Defendants, the Plaintiffs have not abandoned alternative means of computation of back pay as discussed in *Pettway v. American Cast Iron Pipe Co., supra*:

"The method of calculating a class-wide back pay award must not be rigid. This results from the impossibility of calculating the precise amount of back pay. There is no way of determining which jobs the class members would have bid on and obtained if discriminatory [treatment] . . . had not been in existence. Class members outnumber promotion vacancies; jobs have become available only over a period of time; the vacancies enjoy different pay rates; and a determination of who was entitled to the vacancy would have to be determined on a judgment of seniority and ability at that time. This process leads to a quagmire of hypothetical judgments.

It does not follow that back pay claims based on promotions cannot be awarded. Unrealistic exactitude is not required." Id. at 1153–1154.

## THE APPLICATION OF THE STATUTE OF LIMITATIONS UNDER 42 U.S.C. § 1981.

In addition to the action brought under Title VII, in October, 1975, the Plaintiffs brought an action pursuant to 42 U.S.C. § 1981 and § 1985(3). The Plaintiffs filed administrative charges with the EEOC in February, 1973, and argue that they relied on various decisions of the Fifth Circuit that state that the Statute of Limitations in a § 1981 suit are tolled by the filing of EEOC charges under Title VII, *Boudreaux v. Baton Rouge Marine Contracting Co.*, 437 F.2d 1011 (5th Cir. 1971); *Franks v. Bowman Transportation Co.*, 495 F.2d 398 (5th Cir. 1974); *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641 (5th Cir. 1974).

The Plaintiffs additionally argue that while the administrative charges were being processed through EEOC, they did not institute suit under 42 U.S.C. § 1981 and § 1985(3) in order that the EEOC would have an opportunity to investigate and attempt conciliation between the parties, as Congress desired, *Alexander v. Gardner Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Occidental Life Insurance Co. v. EEOC, supra.*

The Defendants rely on *Johnson v. REA, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295, which held that the Statute of Limitations applicable to an action brought

under 42 U.S.C. § 1981 is not tolled during the pendency of proceedings before the EEOC. The Plaintiffs' argument that the rule of *Johnson* should not be applied retroactively must fail as the result of *Williams v. Phil Rich Fan Mfg. Co., Inc.*, 552 F.2d 596 (5th Cir. 1977) which recognized the retroactivity of *Johnson.*

Accordingly, the Plaintiffs' claims pursuant to 42 U.S.C. § 1981 and § 1985(3) are not tolled by the filing of their administrative charges with the EEOC and the one year State of Limitations pursuant to Florida Statute 95.11(7)(b) (1943) applies.

It is therefore

ORDERED AND ADJUDGED as follows:

1. All vacancies occurring after the effective date of Title VII, July 2, 1965, shall be considered with regard to the nineteen (19) named Plaintiffs for the purpose of back pay relief.

2. The 180 day jurisdictional requirement pursuant to 42 U.S.C. § 2000e–5(e) does not apply to the Equal Employment Opportunity Commission.

3. The Plaintiffs' claims pursuant to 42 U.S.C. § 1981 and § 1985(3) are not tolled by the filing of administrative charges with the EEOC and the one year Statute of Limitations pursuant to Florida Statute 95.11(7)(b) (1943) applies.