Delores ELLIOTT, Helen Ambrose, Roberta Pettit, and all other persons similarly situated, Plaintiffs,

v.

SPERRY RAND CORPORATION, a Delaware Corporation, the International Brotherhood of Electrical Workers, AFL–CIO, and Local Union No. 2047 of the International Brotherhood of Electrical Workers, Defendants.

No. 4–74–Civ. 627.

United States District Court,
D. Minnesota,
Fourth Division.

July 12, 1978.

582

J. Richard Bland and William D. Flas-
kamp, Meagher, Geer, Markham, Anderson,
Adamson, Flaskamp & Brennan, Minneapo-
lis, Minn., for plaintiffs.

David S. Doty and James R. Steilen, Pop-
ham, Haik, Schnobrich, Kaufman & Doty,
Minneapolis, Minn., for Sperry Rand Corp.

Hyman Edelman, Maslon, Kaplan, Edel-
man, Borman, Brand & McNulty, Minneap-
olis, Minn., for I.B.E.W, AFL–CIO.

James T. Hansing, Rerat Law Firm, Min-
neapolis, Minn., for Local 2047 of I.B.E.W.

## MEMORANDUM ORDER

LARSON, District Judge.

Defendant Sperry Rand has brought
three motions before the Court: (1) to de-
certify the class, (2) in the alternative to
amend the class certification, and (3) to
strike all allegations in the complaint relat-
ing to the seniority system. The other de-
fendants join in the motions. The motions
are based in part upon three United States
Supreme Court decisions decided after cer-
tification of this class action. *International
Brotherhood of Teamsters v. United States*,
431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396
(1977); *United Air Lines, Inc. v. Evans*, 431
U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571
(1977); and *East Texas Motor Freight Sys-
tem v. Rodriguez*, 431 U.S. 395, 97 S.Ct.
1891, 52 L.Ed.2d 453 (1977).

*I. Motion to Decertify.*

Sperry Rand argues that the Supreme Court's decision in *East Texas Motor Freight v. Rodriguez, supra,* bears on the propriety of the class certification in this case in two respects. First, defendant suggests that under *Rodriguez,* a class should not be certified if the named plaintiffs are unable to prove their individual claims and therefore, in the interest of economy, the named plaintiffs' claims should be tried first. If those claims fall, defendants assert, *Rodriguez* mandates dismissal of the class action.

In *Rodriguez* the named plaintiffs did not move before trial for class certification. They confined their arguments and evidence at trial to their individual claims. The district court held against them on those claims and then dismissed the class action allegations. The Court of Appeals reversed and *sua sponte* certified the class. In reversing the Court of Appeals, the Supreme Court held that it was improper to certify the class because "it was evident by the time the case reached that court that named plaintiffs were not proper class representatives" because, among other things, they were not class members. *Rodriguez, supra,* at 403, 97 S.Ct. at 1896.

 *Rodriguez* is clearly distinguishable from the case at hand; it certainly does not suggest that a district court should order plaintiffs to try their individual claims before certified class claims are tried. Such orders would undermine the principle that the merits of an action are not to be considered in determining the maintainability of a class action. *Miller v. Mackey International Inc.,* 452 F.2d 424 (5th Cir. 1971); *Elliott v. Sperry Rand,* No. 4–74–Civil 627, Memorandum Order, May 27, 1976, at 19; 7 Wright & Miller, *Federal Practice and Procedure,* § 1759 at 577–78 and Suppl. § 1759 n.81. Nor did the Supreme Court suggest that certified class claims must always be dismissed if named plaintiffs fail to prove their own claims—it expressly noted the distinction between cases in which individual claims are tried prior to any request for certification and cases in which a class is properly certified. *Rodriguez, supra,* 431 U.S. at 406 n.12, 97 S.Ct. 1891. In the latter situation, even if the individual claims fail, the class action may be permitted to proceed, depending upon the adequacy of named plaintiff's efforts on behalf of the class. *See Moss v. Lane Co.,* 471 F.2d 853, 855–56 (4th Cir. 1973). Finally, as this Court has noted before, in order to prove their individual claims, plaintiffs will probably proceed at trial by means of evidence which demonstrates class discrimination—the "economy" of trying individual claims first is thus questionable. In short, the Court sees no merit to this proposal and declines to grant a separate trial on this issue.

The second aspect of *Rodriguez* upon which Sperry Rand relies is the Supreme Court's discussion of antagonism between named plaintiffs and the class. Union members in *Rodriguez* had voted against a merger of two collective bargaining units; named plaintiffs, seeking to represent minority members of the union, requested such a merger in their complaint. The Supreme Court cited this as "another factor" militating against certification in that case. Sperry Rand argues that since this Court relied on the appellate opinion in *Rodriguez,* now overturned, it should reconsider its analysis of the antagonism question here.

 The Court notes that its previous decision did not rely on *Rodriguez* alone, but on principles drawn from other cases as well. *Memorandum Order,* May 27, 1976, at 14–17. Moreover, the Supreme Court opinion cannot be viewed as holding that as a matter of law any vote by class members or putative class members contrary to some expressed view of named plaintiffs makes certification improper. That determination necessarily turns on the facts of each case. The relevant facts here were closely analyzed and the Court found that the vote involved was unreliable; the voters were not congruent with the class; it was unclear how much information the voters had and whether it was correct; and that the vote revealed little about the degree and nature of the opposition to the suit other

than generalized displeasure. It was not even clear whether the voters opposed the particular relief plaintiffs seek. *Rodriguez* has no bearing on these factual findings.

■ Finally, defendant requests decertification because named plaintiff Elliott resigned from Sperry Rand in December of 1977. They assert that she is no longer a proper class representative because as a nonunion member she is in an adverse economic position to current employees who are union members. The latter may be required to pay for a damage claim, through their dues, if the union is found liable, while Elliott is not faced with this possibility. But the class includes former employees and Elliott is a member of that group. Former employees have frequently been permitted to represent current employees. *See e. g. Reed v. Arlington Hotel,* 476 F.2d 721 (8th Cir. 1972), *cert. denied* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973). Moreover, the other named plaintiff is still an employee of Sperry Rand—if anything, Elliott's resignation is a positive factor, for we now have a current employee and a former employee representing a class composed of both groups. Finally, as the Court has noted before, should an actual conflict surface due to the factors defendants cite, it can appropriately be dealt with at that time.

II. *Motion to Amend.*

The class was conditionally certified and defined to include:

"former, present, and future female employees of defendant Univac employed at its plants in and near St. Paul, Minnesota and who are, have been, or will be members of defendants Local and International, for the period commencing on July 2, 1965 and continuing to the date of trial."

Defendants request that the certification be altered as follows:

"Those female employees of defendant Univac employed at its plants in and near St. Paul, Minnesota, who are, have been, or will be members of defendants Local and International, for the period commencing 180 days prior to the filing of the EEOC complaint enabling this Court to assume jurisdiction in this action, September 4, 1972."

September 4, 1972, refers to the date 180 days preceding the filing.

The amendment would limit the class to present employees and former employees who worked for Sperry Rand as of September 4, 1972. But it appears from defendant's supporting memorandum that it also wishes to limit the actionable *claims* in the suit to claims arising on or after September 4, 1972, a limitation which the proposed class definition does not accomplish because the scope of the claims and the membership of the class are not necessarily congruent. A *present* employee may assert claims arising in 1970, for example. The Court believes that the first issue—who may be a class member—can be resolved at this time. The second question is more complex, has little to do with the class definition, and may depend upon the facts as they subsequently develop; the Court will briefly discuss the issue in order to alert the parties to some of the Court's concerns in this difficult area of law, but resolution of the questions raised by defendants' memorandum will be deferred. Some background is helpful to an understanding of both issues.

■ As a general rule, complaints in Title VII cases must be filed with the EEOC in accordance with the time limits set out by the statute, 42 U.S.C. § 2000e–5(e).[1] Failure to make a timely filing with the EEOC is, of course, grounds for dismissal of an action in district court. In order to determine whether a charge is "timely," however, the Court must determine when the alleged Title VII violation occurred. This has proved surprisingly difficult, for some employment practices cannot logically be viewed as discrete "incidents" occurring at a particular point in time—a whole series

---

1. In some circumstances charges may be filed with State enforcement agencies and the time periods for filing vary. Since the period for filing with the EEOC relevant to this suit is 180 days, that figure will be used throughout this opinion as a matter of convenience.

of decisions, for example, may influence whether an employee is promoted. Courts have developed the concept of "continuing violations" to resolve timeliness questions, but the case law on this subject is inconsistent and confusing, for the concept is actually a conglomeration of several different ideas. The recent Supreme Court decision in *United Air Lines, Inc. v. Evans, supra*, appears to add to the confusion. It has been suggested that, at least before *Evans*, the theory was used in four different types of circumstances. *Schlei & Grossman, Employment Discrimination Law*, Chapter 28 (1976). This framework is a helpful way to analyze the theory, but the Court notes that the cases rarely fall neatly into one category or another and there may be additional methods of categorizing the cases not discussed below.

██ The first situation, and perhaps the clearest, is typified by the example above—in some instances, different events occurring at different times may ultimately result in unlawful discrimination and the Court must determine which event triggered the running of the statute. Using the example of promotions, courts may consider factors such as when the employee was told of the promotion decision, whether others were subsequently promoted while the employee's application remained open, or how many levels of decision-making might be required in the structure of the employer's business. *See e. g., Cedeck v. Hamiltonian Federal Savings & Loan*, 551 F.2d 1136 (8th Cir. 1977). *See also Gates v. Georgia-Pacific Co.*, 492 F.2d 292 (9th Cir. 1974). *But cf. Phillips v. Columbia Gas Co. of W. Va. Inc.*, 347 F.Supp. 533 (S.D.W.Va. 1972), *aff'd* 474 F.2d 1342 (4th Cir. 1973). Although the "continuing violation" language may be used in this context, it seems that the courts are not really concerned with continuity so much as they are with

practically assessing the employment situation from the lay person's viewpoint. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring.

██ The second situation is quite different. An employee may challenge a series of events, all of which are alleged to have been discriminatory, but only one of which occurred within the relevant time period. An employee, for example, may be repeatedly denied a benefit; so long as the most recent denial occurred within the appropriate time period, no "continuing violation" question really arises, for the recent event fully supports jurisdiction. But the cases do not always clearly delineate this distinction. *Compare Cox v. United States Gypsum Co.*, 409 F.2d 289 (7th Cir. 1969), with *Marlowe v. General Motors Corp.*, 489 F.2d 1057 (6th Cir. 1973).[2] Moreover, once it is determined that the Court has jurisdiction because at least one event in a series was timely challenged, another question arises—can the employer be held liable for all of the events or only for the one occurring in the charge-filing[3] period? Plaintiffs will often argue in such cases that the violations were continuing, creating a pattern of discrimination against them, so that all of the events are actionable. Courts' responses to this argument vary. *Compare Tarvesian v. Carr Div. of TRW, Inc.*, 407 F.Supp. 336 (D.Mass.1976), and *Loo v. George*, 374 F.Supp. 1338 (D.Hawaii 1974), with *Lattimore v. Loews Theatres, Inc.*, 410 F.Supp. 1397 (M.D.N.C.1975), and *Fekete v. United States Steel Corp.*, 353 F.Supp. 1177 (W.D.Pa.1973).

██ The third situation is one in which allegations are made that the employer has engaged in a continuous, pervasive, institu-

---

**2.** *Cox* has been cited for the proposition that layoffs are continuing violations, *Macklin v. Spector Freight Sys., Inc.*, 156 U.S.App.D.C. 69, 478 F.2d 979 (1973), but as Schlei & Grossman point out, it was actually a pleading case in which the court construed allegations of discriminatory layoffs to encompass allegations of

discriminatory recall within the proper time period. Schlei & Grossman, *supra*, at 898–99. "Continuity" was thus not actually at issue.

**3.** "Charge-filing period" refers to the period 180 days preceding the filing of charges with the EEOC.

tionalized "system" of discrimination. The key question here is not necessarily whether a present violation exists, for the ongoing operation of the entire system is often at issue. But the standing of the charging party may be questioned because he is unable to point to a specific instance in the charge-filing period in which the system adversely affected him. An employer charged with maintaining an unlawful transfer system, for example, may argue that the plaintiff did not apply for a transfer within the statutory time limits preceding the filing and therefore has no cause for complaint. This issue is often resolved by theorizing that a challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future. *See e. g., Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3rd Cir.), *cert. denied* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). *See also Bartmess v. Drewrys USA, Inc.*, 444 F.2d 1186 (7th Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971). The same question of whether events preceding the charge-filing period are relevant to liability may arise in this situation, as it does in the second situation described above; but in systematic discrimination cases, courts seem to simply assume that such events are actionable. In *Rich v. Martin Marietta, supra,* the Court of Appeals criticized the district court for relying on *post* -filing statistics in holding that defendant had not discriminated. *Id.* at 346.

■ Finally, the continuing violation rubric may be used where an employee charges that a present practice perpetuates the effects of past discrimination. In such cases, the present policy may be entirely neutral, but may carry forward the effects of abandoned and previously unchallenged discriminatory practices. These types of cases are perhaps the most difficult, for, at bottom, they do not raise purely procedural "timeliness" questions. Rather, they involve the substantive question of whether a particular employment practice that applies equally to all employees, and has no disparate impact on any group, is nevertheless unlawful because it fails to place prior discriminatees in their "rightful places." *See e. g., Marquez v. Omaha District Sales Office, Ford Motor Co.*, 440 F.2d 1157 (8th Cir. 1971).

■ Another, slightly different, aspect of what is indiscriminately called the "continuing violation" theory is whether former employees can properly assert continuing violation claims. If a charge is filed within 180 days of termination, the timeliness of the challenge to particular practices can be analyzed by one of the several methods discussed above. Thus, if a policy has remained in existence or a pattern of discriminatory events has occurred right to the date of discharge, the charge may be deemed timely. The former employee has standing to assert the claim because, within the charge-filing period, he was subject to the discriminatory policy or practice. This rationale appears to break down, however, if the filing occurs more than 180 days following termination. Whatever the nature of the charges, the suit would appear to be time-barred, for the last possible date upon which a policy or practice could have adversely affected the former employee was outside the statute of limitations. The Eighth Circuit has held that as a general rule former employees cannot use the continuing violation theory to excuse a failure to file within 180 days of their termination:

> "We do not think this [continuing discrimination] theory has any validity when asserted by a former employee. . . . For such a former employee the date of discharge or resignation is the controlling date under the statute, and a charge of employment discrimination must be timely filed in relation to that date." *Olson v. Rembrandt*, 511 F.2d 1228, 1234 (8th Cir. 1975).

*But see EEOC v. Western Publishing Co.,* 502 F.2d 599 (8th Cir. 1974) (In particular circumstances of case, discrimination continued after employment terminated).

Defendant's present motion to amend actually relates only to the last point. In a class action, the timely filing by any member of the class satisfies the filing requirement for the entire class. The filing does not operate, however, to bring into the class persons whose claims were time-barred when the filing occurred. Since the statute runs against former employees as of the date of their termination, it follows that they cannot be members of the class unless they were employed within the appropriate time limit preceding the representative filing, even if "continuing violations" are alleged. Many courts have so ruled. *See e. g., Laffey v. Northwest Airlines,* 185 U.S. App.D.C. 322, 365–66, 567 F.2d 429, 472–73 (1972); *Wetzel v. Liberty Mutual Insurance Co., supra; Coppotelli v. Howlett,* 76 F.R.D. 20 (E.D.Ill.1977); *Carter v. Newsday,* 76 F.R.D. 9 (E.D.N.Y.1976). *But see Briggs v. Brown & Williamson Tobacco Corp., Inc.,* 414 F.Supp. 371 (E.D.Va.1976). The discussion in *Laffey, supra,* is most helpful in analyzing this issue:

> "[The representative filing], it seems clear, however, cannot revise claims which are no longer viable at the time of the filing. Any other result would produce an anomaly. Time-barred members could not press their claims individually either before the Commission or judicial tribunals; and surely the employer's liability to them cannot be made to depend upon whether they come into court in a different character. . . . Not surprisingly, then, courts which have considered the question have uniformly held that only those employees who could have filed charges with the Commission individually when the class filing was made are properly members of the litigating class.

> \* \* \* \* \* \*

It is contended, however, in support of the District Court's inclusion of the disputed class members within its Title VII award, that the Title VII violations complained of were of a continuing nature and thus that all past and present stewardesses could have made timely filings . . . when the filing for the class occurred. . . . We agree that where, as here, discrimination is not limited to isolated incidents but pervades a series or pattern of events which continue to within ninety days of the filing . . . the filing is timely as to all similarly situated employees regardless of when the first discriminatory incident occurred.

\* \* \* \* \* \*

NWA does not dispute that the violations here are of a continuing kind. But NWA does contend that the discrimination could not be deemed continuing as to those who left the company's employ more than ninety days prior to the class filing . . . . We are in agreement . . . . A severing of the employment relationship ordinarily terminates a discrimination against the severed employee, and activates the time period for filing charges with the Commission concerning any violation which occurred at separation or which may have been continuing up to the date thereof." 185 U.S.App. D.C. at 365–66, 567 F.2d at 472–73 (footnotes omitted).

Although defendant relies on *Evans* to support the amendment of the class definition, the principles discussed above were developed before *Evans* was decided. Thus, other than to note that *Evans* is not inconsistent with these decisions, it is unnecessary to discuss that case in relation to this part of defendant's motion. The class definition as presently worded would include former employees who may have left defendant's employ long ago and whose claims have long been barred. The Court agrees with defendant that the class definition ought to be amended to cut out employees who left Sperry Rand, by involuntary discharge or quitting, more than 180 days preceding the filing of the complaint in this case.

This conclusion disposes of defendant's present motion. But as the Court has already noted, the amended class definition does not accomplish all that defendant apparently wishes to accomplish, for it cuts out some class members but does not affect

the scope of the claims that may be asserted by the remaining class members. Some further discussion of *Evans* may be helpful to clarify this point.

Defendant apparently wishes to limit the actionable claims in this suit to claims arising on or after September 4, 1972, based on the decision in *United Air Lines, Inc. v. Evans, supra.* In *Evans*, a flight attendant who worked for United was forced to resign in 1968 when she married because the company had a "no marriage" rule. She was rehired in 1972, but was not credited with seniority for any service prior to the date of rehiring. She filed with the EEOC in February 1973 and subsequently brought suit. The District Court dismissed the complaint on the ground that the claim was time-barred for failure to file within 90 days of the separation in 1968. The Court of Appeals reversed and the Supreme Court reversed the Court of Appeals, holding that the complaint was properly dismissed. Evans contended that the complaint was timely because United was guilty of a present continuing violation. Two reasons were used as support for this argument: first, the seniority system illegally discriminated against her because she was treated less favorably than males hired after her termination but before her re-employment; and, second, that the seniority system perpetuated past discriminatory acts.[4] The Supreme Court rejected both arguments. It noted that United treated both males and females hired between 1968 and 1972 alike and, furthermore, did not grant seniority credit to either male or female employees who left before 1968 and were subsequently rehired. In short, the seniority system did not differentiate between similarly situated males and females on the basis of sex.

As to the second argument, the Court agreed that the seniority system gave present effect to a past act of discrimination, but said:

"But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). *A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.* [Emphasis added]. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

\* \* \* \* \* \*

Respondent emphasizes the fact that she has alleged a *continuing* violation. \* \* But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. [Emphasis in original.]" *Evans, supra,* 431 U.S., at 558, 97 S.Ct., at 1889.

The Court added that the seniority system was immunized from attack under § 703(h) of the Act.

Defendant contends that the italicized *sentence* means that the entire theory of "continuing violations," presumably in all of its varied forms, has been put to rest. Understandably, the contours of defendant's argument are not entirely clear, for the implications of *Evans* are as uncertain as pre-*Evans* case law was diverse and confusing. Defendant may be asserting any one of several different propositions: (1) that the type of analysis courts use in the first situation discussed above to determine when plaintiffs should reasonably have been expected to bring their complaints is no longer viable; or (2) that evidence of systematic discrimination that occurred before September 4, 1972, is irrelevant to any finding of liability in this suit; or (3) that no neutral practice, whether or not it is tied to a seniority system, which perpetuates the effects of discrimination occurring before the charge-filing period is actionable; or (4) that even if a present violation is established, no class member whose claims arose

---

**4.** Encompassed in this argument was the theory that the system not only perpetuated past discriminatory acts, but that it was an existing policy that could always be timely challenged. Evans' claim came years after her original discharge and a year after rehiring.

before the charge-filing period and were based on the same type of discriminatory event is entitled to relief.

Post-*Evans* law on "continuing violations" is in disarray and support can be found for almost any of these propositions. The EEOC views *Evans* merely as holding, in accord with prior case law, that discharges cannot be deemed "continuing violations," but as having no other effect on the concept. EEOC Interpretative Memorandum, 46 U.S.L.W. 2028 (July 19, 1977). *See also Miller v. Miami Prefab*, 438 F.Supp. 176, 179 (S.D.Fla.1973). A broader view is that *Evans* prohibits a plaintiff from building a prima facie case based on occurrences preceding the charge-filing period. *See Neloms v. Southwestern Electric Power*, 440 F.Supp. 1353, 1369 (N.D.La.1977) (". . . the only actionable claims would be those that occurred within 180 days of the filing of the earliest charge of discrimination. . . . [T]he Court, in examining statistical evidence, must judge the hiring and promotions statistics, as well as others, from a point in time 180 days prior to the . . . filing"). *See also Dickerson v. United States Steel Corp.*, 439 F.Supp. 55, 69–70 (E.D.Pa.1977). *But cf. Caldwell v. Seaboard Coastline R.*, 435 F.Supp. 310 (N.D.N.C.1977) (*Evans* held not to affect class suit alleging a pattern or practice of discrimination).

The Eighth Circuit, in a two to one decision in a case very similar to *Evans*, decided that *Evans* barred the claim of a pre-Act discriminatee who challenged a presently neutral system which perpetuated past discrimination by denying her the same salary she would have had had the pre-Act discrimination not occurred. The case is thus broader than *Evans* in that it does not involve either post-Act discrimination or a seniority system. *Farris v. Board of Education of City of St. Louis*, 576 F.2d 765, filed May 17, 1978 (8th Cir.).[5] One court has also held that even where a present discriminatory practice is shown, relief can extend only to class members who were affected by the practice in the charge-filing period. *See Dickerson v. United States Steel Corp., supra. But cf. Miller v. Miami Prefab, supra.*

Although the Court declines to express agreement or disagreement with these various positions at this time, it should be evident that it is difficult to treat *Evans* simply as a wholesale rejection of the continuing violation theory in all of its forms. When viewed against the complex background of years of Title VII litigation in which the concept developed, the one-sentence dictum from *Evans* hardly appears to represent a considered judgment on every use of the theory in every situation.[6] The arguments on this issue must be considerably refined and clarified before a decision can be reached on the possible applications of *Evans* here. Perhaps no "continuing violation" question will arise at all during the liability phase of the suit, for plaintiffs have alleged that violations exist at present and it is unclear how far back plaintiffs' proof might go; or, perhaps, the application of *Evans* will be relevant to some claims, or some class members, but not to others. In

**5.** Judge Ross, dissenting in *Farris*, noted an apparent incongruity between the reiteration of the holding in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), in the *Teamsters* case, *International Brotherhood of Teamsters, supra*, at n. 15, and the statements of the Court in *Evans*. *Griggs* has been regarded as a "perpetuation" case and the Court in *Teamsters* acknowledged that but for § 703(h), the seniority system in *Teamsters* would fall under the *Griggs* rationale because the system perpetuated past acts of discrimination. In another sense, however, *Griggs* and *Evans* and *Teamsters* are not necessarily antagonistic, for *Griggs* is also the classic "disparate impact" case. That is, the practices struck down in *Griggs* were unlawful not only because they "perpetuated" the effects of a past act, but because the purportedly neutral requirements the employer imposed conveniently favored whites and disproportionately burdened blacks. Thus it would seem that a wholly neutral system that perpetuates a past act of discrimination against a particular employee must be sharply distinguished from a purportedly neutral system which has a present disparate impact on a protected group.

**6.** The Supreme Court did not even mention, for example, the fact that Congress has expressed approval of the continuing violation theory. *See* 118 *Cong.Rec.* 494 (1972).

short, if the factual issues are more clearly presented and the legal arguments consequently more narrowly defined and focused, the task of the parties and the Court will be far more manageable. Although another pretrial motion might suffice to present the questions with sufficient specificity, this determination may have to await trial on the merits.

III. *Motion to Strike.*

 All of the defendants make the final point that a separate trial should be held on the seniority system, for purposes of economy. If the seniority system is bona fide, they assert, the seniority claims can be stricken and, moreover, *all* of plaintiffs' claims will fall and the case will be at an end. This is premised on the assumption that all of plaintiffs' claims are tied in some fashion to the seniority system rather than to other practices. Although the Court agrees that the bona fides of the seniority system is an important issue, for the system may be immune from attack under *Teamsters, supra,* it is not at all clear that plaintiffs' complaints relate solely to seniority; the allegations are quite to the contrary. The Court therefore cannot agree at this time that a separate trial is in order, for even if the bona fides of the system are established, it is not certain that the necessity for further trial would be obviated.

But the Court is aware that one of defendants' concerns underlying this request, as well as the other request for a separate trial, is that the particulars of plaintiffs' case are difficult to identify and the precise nature of the charges is unclear. The Court therefore feels that an Order for pretrial statements must be entered so that the Court and the parties can anticipate the legal and factual issues that may arise.

IT IS THEREFORE ORDERED THAT:

1. Defendants' motion to decertify the class is denied.

2. Defendants' motion for a separate trial of named plaintiffs' claims is denied.

3. Defendants' motion to amend the class certification is granted. The class shall be defined as follows:

Those present and future female employees of defendant Univac employed at its plants in and near St. Paul, Minnesota, and who are or will be members of defendants Local and International, up until the date of trial; and those former female employees who were employed by defendant Univac at its plants in and near St. Paul, Minnesota, and who were members of defendants Local and International, on September 4, 1972, or thereafter.

4. Defendants' motion for a separate trial on the seniority system is denied.

5. A pretrial conference will be held on Friday, September 1, 1978, at 9:00 A.M.

The attorneys for the respective parties are hereby directed to submit to the Court before August 25, 1978, the following:

(a) A written stipulation or statement of the uncontested facts.

(b) A written statement which shall contain for each allegation in the complaint a concise summary of the essential facts pertinent to the allegation; and a recital of the contested issues of fact; and recital of the contested issues of law relating to each claim. The attorneys shall exchange these written statements prior to the conference. At the conference the Court will consider (1) simplification of the issues and (2) desirability of further pretrial orders relating to the conduct of the litigation.