* This appeal was originally decided by unreported order on July 20, 1981. See Circuit Rule 35. The Court has subsequently decided to issue

The state trial court found that trial counsel was reasonably effective. That finding is supported by the record as the record indicates the decisions not to call Robinson and Higgins as witnesses were reasonable tactical decisions. Appellant has not shown by clear and convincing evidence that the state trial court's finding was clearly erroneous. Therefore, neither the District Court nor this Court may substitute its review of the record for the determination by the state court. *See Sumner, supra*, 449 U.S. at 542–51, 101 S.Ct. at 767–771.

The judgment of the District Court is affirmed.

Horace L. PATTERSON, et al., Plaintiffs, Appellants-Appellees,

v.

YOUNGSTOWN SHEET AND TUBE COMPANY, and Local 6, Bricklayers, Masons and Plasterers International Union of America, AFL–CIO, Defendants, Appellees-Appellants.

Nos. 80–1983, 80–2027 and 80–2028.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1981.

Decided July 20, 1981.*

the decision as an opinion because the panel granted the joint motion to publish.

Leroy P. Vital, Chicago, Ill., for plaintiffs, appellants-appellees.

Lawrence L. Summers, Vedder, Price, Kaufman & Kammholz, Bernard M. Mamet, Chicago, Ill., for defendants, appellees-appellants.

Before CUMMINGS, Chief Judge, GIBSON, Senior Circuit Judge,** and BAUER, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

This suit, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., is based upon EEOC charges which were filed on September 21, 1969. Those charges were filed against Youngstown Sheet and Tube Company (Youngstown) and Local 6, Bricklayers, Masons and Plasterers International Union of America, AFL–CIO (Local 6) by employees of Youngstown employed as mason-helpers at Youngstown's Indiana Harbor Works facility. All mason-helpers at Youngstown, at the time of the complaint, were black males. They alleged that because of their race they were denied the opportunity to move from the position of mason-helper to that of brick mason. Mason-helpers are members of the United Steelworkers of America, Local 1011 collective bargaining unit (United Steelworkers). Brick masons and brick mason apprentices are represented by Local 6.

On October 22, 1971, ten individual plaintiffs filed their complaint in federal court, alleging violations of Title VII. The action was certified as a class action on November 4, 1972. It was brought on behalf of " * * * black employees of [Youngstown] who are employed as masons' helpers and who have so been employed on or since July 2, 1964 or enjoyed right of recall as of that date."

On May 12, 1977, the district court granted a motion for partial summary judgment for Youngstown, on the grounds that certain claims which plaintiffs sought to litigate (1) were beyond the scope of the suit which could properly be based upon the underlying EEOC charges, and (2) would involve an indispensable party (the United Steelworkers) which had not been charged before the EEOC and could not be made a party to the suit. As a result of this partial summary judgment, the sole remaining issue in the case was whether Youngstown and/or Local 6 denied the mason-helpers the opportunity to move to the position of brick mason or brick mason apprentice because of their race.

On August 12, 1977, the court again entered an order for partial summary judgment, this time for plaintiffs. The court found that Youngstown

was in violation of 42 U.S.C. §§ 2000e et seq. ("Title VII"), for the period of 2 July 1965–21 September 1969, as it denied Plaintiffs the opportunity to move from the position of mason helper to that of brickmason or brickmason apprentice because of Plaintiffs' race.

A three-day trial was held in March 1979. Subsequently the court issued its decree and held that

Local 6's requirements for apprenticeship and admission into membership as apprentices that applicants must be less than 22 years of age (or 24 with military service credit) and have a high school education or GED, as well as its stated preference for sons of members, [were] in violation of Title VII and unlawful.

However, the court also held that "Local 6's unlawful requirements and practices did not rise to such level as, within the Court's sound discretion under Section 706(g) of Title VII * * *, Local 6 should be held liable for any back pay herein."

In addition, the court's decree formalized earlier pronouncements, set forth a formula for a magistrate to follow in determining back pay against Youngstown, entered injunctive relief against both defendants, and

---

** The Honorable Floyd R. Gibson, Senior Circuit Judge, U.S. Court of Appeals for the Eighth Circuit, sitting by designation.

deferred a ruling on the amount of attorney fees to be assessed against Youngstown.

On May 7, 1980, the district court entered an order adopting the magistrate's report and recommendations, which awarded $28,-382.77 to plaintiffs. Subsequently, it assessed approximately $66,000 in attorney fees against the employer for four of plaintiffs' attorneys.

On appeal, the appellants/cross-appellees mason-helpers assign as error (1) the district court's computation of the back pay awarded, (2) the district court's computation of attorney fees awarded, and (3) the finding that Local 6 is not liable for back pay or attorney fees. Youngstown has cross-appealed, assigning as error the entry of summary judgment on the issue of its liability. We affirm the judgment of the district court.

Appellants, cross-appellees Patterson et al. (plaintiffs) have moved to strike Youngstown's cross-appeal on the ground that the point of error urged here, namely, that summary judgment was inappropriate on the issue of liability, was never presented to the district court in a manner whereby the court could rule on it. At the time the court entered its order for partial summary judgment on the issue of liability, its order was interlocutory and hence non-appealable. It did not become appealable until final judgment was entered on July 17, 1979. Youngstown was under no duty to make any post-trial motions in order to reserve the right to appeal the judgment entered against it. Plaintiffs' motion to strike Youngstown's cross-appeal is denied along with plaintiffs' motion for an order directing payment of back pay and attorney fees as partial back pay and costs.

*Back Pay Award*

█ The district court properly based its back pay award upon the vacancies which occurred, during the relevant period, in Youngstown's brick mason department only. The EEOC charges filed by plaintiffs confined the allegations of discrimination to the brick mason department. In addition, the only union named in the EEOC charges was the union which represents employees in the brick mason department, Local 6. The Steelworkers Union represents employees in the departments which plaintiffs later hoped to include in the computation of back pay. However, plaintiffs did not name the Steelworkers in their EEOC charges or in their complaint, and never attempted to join the Steelworkers as a party defendant. The court properly applied the correct standard in determining that "the allegations of the complaint which relate[d] to promotion and transfer within the Steelworkers bargaining unit [were] not properly within the scope of a judicial complaint based upon Plaintiffs' EEOC charges." The court did not abuse its discretion when it found that such allegations were not "like or reasonably related to" the charges made before the EEOC. *See Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971).

█ Plaintiffs also urge that the court erred in its computation of back pay by excluding evidence of the fact that Youngstown on occasion contracted with outside companies to perform construction work, including brickmasonry, at its plant. Plaintiffs argue that they were prejudiced by this exclusion insofar as they were not allowed to show the "actual historical vacancies during the relevant time period." We disagree.

Firstly, Youngstown's practice of "contracting out" was not disputed on the record. Therefore, plaintiffs were not prejudiced by not being allowed to prove that the practice existed. Secondly, we know of no authority for the proposition that employees of independent contractors should be deemed employees of the defendant employer for purposes of back pay liability under Title VII. The "contracting out" of masonry work was commonplace in the industry, and Youngstown was under no duty to use its own mason workers when possible rather than to subcontract the work. As the Supreme Court stated in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1977), "Title VII prohibits [an employer] from having as a goal a work force

selected by any proscribed discriminatory practice, but it does not impose a duty to adopt a hiring procedure that maximizes hiring of minority employees."

■ Plaintiffs contend that the wrong time period was used in computing their back pay. They urge that the court should have gone back to July 2, 1965, in finding liability, and that it should have continued the back pay liability until the present because "class members have not attained their 'rightful place' even today." In fashioning the time period for which back pay was to be awarded, the court selected as its beginning date the date of "the earliest apprentice hiring [after 1976], which occurred * * * [on] January 10, 1968." Youngstown urges that the period should begin on a date two years prior to the date plaintiffs filed their EEOC charges.

The court found that

the back pay award would be the same in this case regardless of which beginning date for computation were chosen. The Court has determined that only one more black placement would have achieved over 16% (or even 17%) of total black placements as apprentices in the 4 years between 1965 and 1969. [The court had found that in the absence of discrimination, black employees would have received approximately between 15% and 17% of the job vacancies.] One black apprentice was hired during the first 2 years (in 1966) and the next would most likely not have been hired until the latter 2 year period. Given that complete precision as to the probable date of hire cannot be achieved, the Court hereby resolves the issue in favor of Plaintiffs by selecting as the vacancy computation date the earliest apprentice hiring which occurred within the latter 2 year period— that is, January 10, 1968.

42 U.S.C. § 2000e–5(g) provides in part: "Back pay liability shall not accrue from a date more than two years prior to the filing of the charge with the Commission." This provision does not limit the availability of back pay but it does limit the extent to which that remedy may be afforded. *See,*

*e. g., Miller v. Miami Prefabricators, Inc.,* 438 F.Supp. 176, 181 (S.D.Fla.1977). "Under Title VII back pay liability exists only for practices occurring after the effective date of the Act, July 2, 1965, and accrues only from a date two years prior to the filing of a charge with the EEOC." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 410 n.3, 95 S.Ct. 2362, 2368, 45 L.Ed.2d 280 (1974). The district court scrupulously analyzed the facts of this case in the context of Title VII's two-year back pay limitation. It concluded that the beginning date for computation of back pay would not affect the award. This ruling, rather than being "clearly erroneous," was well-reasoned and correct, and we uphold the court's determination on the issue.

We find the date chosen as the ending date for the back pay award to be equally correct. The court held that "as a matter of law and within the Court's sound discretion the period over which back pay is to be computed is 10 January 1968—10 February 1974 when Plaintiffs' class members actually were afforded the opportunity to become mason apprentices." The court found that in early February 1974, Youngstown afforded, to the six most senior members of plaintiffs' class who applied, the opportunity to become mason apprentices. It ruled that such placements corrected the earlier denials of jobs for which Youngstown had been found liable. The court's ruling on this issue does not constitute an abuse of discretion under Title VII.

*Attorney Fees*

■ Plaintiffs assign as error the district court's method of computing their award of attorney fees under section 706k of Title VII, 42 U.S.C. § 2000e–5(k). They submit that the court abused its discretion in awarding plaintiffs' attorneys only $57,500 in fees. We cannot agree.

The court, in its memorandum of May 30, 1980, set forth its findings and conclusions in regard to the allowance of counsel fees. In the memorandum, the court properly asserts its broad discretion in this area and then goes on to explain and support its findings in some detail. The court found that

plaintiffs [did not prevail] against Youngstown on any matter other than a motion for summary judgment as to liability covering a single employment practice. Th[e] Court's entry of partial summary judgment in favor of Youngstown on May 12, 1977 disposed of plaintiff's [sic] liability with respect to many other employment practice[s] affecting the more than 8,000 persons in the United Steelworkers bargaining unit at Youngstown, as compared to the single employment practice involving 55 members of the class represented by plaintiffs.

The court delineated several "serious deficiencies" in the record offered to justify the amount of fees requested by plaintiffs' counsel.

We find that the fees awarded in this case were proper. The court's memorandum is well-reasoned and supported, and its conclusions evidence no abuse of discretion.

*Findings Regarding Local 6*

Finally, plaintiffs urge that they should have been awarded back pay and attorney fees from Local 6. The district court found that Local 6's requirements for apprenticeship and admission into membership were in violation of Title VII. However, the court also found that there was not a sufficient nexus between Local 6's behavior and the injuries suffered by plaintiffs to hold Local 6 liable for back pay. *See Myers v. Gilman Paper Corp.*, 544 F.2d 837, 848 (5th Cir. 1977), certiorari dismissed, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59, 42 U.S.C. § 2000e–5(g).

There is sufficient evidence in the record before us to determine that these findings were neither clearly erroneous nor inconsistent with each other. The district court acted within its sound discretion under section 706(g) of Title VII in holding Local 6 liable for "injunctive and other affirmative relief to correct the effects of its unlawful practices, but not for back pay."

For the foregoing reasons, the judgment of the district court is, in all respects, *affirmed.*