Joannie Allen DUMAS,
Plaintiff-Appellant,

v.

TOWN OF MOUNT VERNON,
ALABAMA, et al.,
Defendants-Appellees.

No. 77–2999.

United States Court of Appeals,
Fifth Circuit.

March 3, 1980.

Gregory B. Stein, Larry T. Menefee, Mobile, Ala., for plaintiff-appellant.

Thomas A. Deas, Mobile, Ala., for defendants-appellees.

John Gartman, pro se.

Charles Simison, pro se.

Mylan R. Engel, Mobile, Ala., for Mobile County Personnel Bd. & Pierce.

Before BROWN, HILL and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

This is an appeal from the dismissal of an individual action alleging a racially discriminatory refusal to hire. For the reasons set

out below, we affirm the dismissal of all claims except those against the Personnel Board arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976).

Appellant, Joannie Allen Dumas, is a black female citizen of Mount Vernon, Alabama, a political subdivision incorporated as a municipality under the laws of Alabama. In September, 1974, Ms. Dumas applied to the Mobile County Personnel Board for the position of Assistant Town Clerk for the Town of Mount Vernon. The Personnel Board, as the administrator of the Mobile County Civil Service System, administered an exam and interview-appraisal to Appellant Dumas. Thereafter, Ms. Dumas was ranked first on the employment register, from which the Town of Mount Vernon was to select the person to fill the vacancy of Assistant Town Clerk. Ms. Dumas was not interviewed by the Town and upon calling the mayor on November 18, 1974, learned that a white person ranked below her on the Personnel Board's certification list had been hired for the job. On December 16, 1974, Ms. Dumas filed the first of several charges of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging she was being denied employment on the basis of race. In April, 1975, the white person who had been hired instead of Ms. Dumas the previous November resigned and Appellant's name was again sent to the Town for consideration. This time she was the only person certified to the Town by the Personnel Board. After an interview, Mayor Simison, on behalf of the Town, notified Ms. Dumas by letter dated May 12, 1975, that "[u]pon a recommendation by the Mobile County Personnel Board," the Town had agreed not to fill the position of Assistant Town Clerk "at this 'time." The reason given for this decision was that the employee who had just quit the job had one year to reapply for the position under civil service rules. On May 20 and 22, 1975, Ms. Dumas wrote the EEOC supplementing her charges of racial discrimination, informing the EEOC of the Town's decision not to fill the vacancy. The job has remained open at all times since then. Appellant has received no notification that she was no longer being considered for the position and no notification that her name was being removed from the employment register. On January 13, 1977, the EEOC sent Appellant notice of her right to sue within ninety days and she filed suit on March 31, 1977, against the Town of Mount Vernon, the Mobile County Personnel Board, the Town's Mayor and former Councilman, John A. Gartman, the Town's former Mayor, Charles H. Simison, and the former Director of the Personnel Board, George H. Pierce. Jurisdiction over the Town, the Personnel Board and Simison was premised on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1976), and on 42 U.S.C. § 1981 (1976). Jurisdiction over each of the individual defendants was premised on 42 U.S.C. §§ 1981, 1983, 1985(3) and 1986 (1976).

By order of August 10, 1977, the district court held that "the wrongful acts of the defendants complained of by the plaintiff occurred on or about November 18, 1974, and again during the month of May, 1975," and that the claims bottomed on 42 U.S.C. §§ 1981, 1983 and 1985(3) were time-barred by the one-year statute of limitations set out in Ala.Code tit. 7, § 26 (1973), and the § 1986 claims were time-barred by the one-year statute of limitations set out in that section. Defendants Gartman and Pierce were dismissed because the claims against them rested entirely on violations under Title 42. The Personnel Board was dismissed for failure to state a claim upon which relief could be granted since the district court found that there was no allegation on the face of the complaint of any action by the Personnel Board which would amount to an unlawful employment practice under 42 U.S.C. § 2000e *et seq.* After a hearing on the jurisdictional question of whether the remaining defendants, the Town and Simison, were "employers" within the meaning of Title VII, the district judge dismissed the action, finding they were not employers since the Town did not employ the requisite fifteen employees specified by 42 U.S.C. § 2000e(b) during the

relevant years and Simison's liability depended upon that of the Town. *Dumas v. Town of Mt. Vernon*, 436 F.Supp. 866 (S.D. Ala.1977).

### I. Claims Under Sections 1981, 1983, 1985(3) and 1986

Since there is no federal statute of limitations for a cause of action arising under §§ 1981, 1983 or 1985(3), resort must be had to state law to determine the applicable limitations period. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 at 250 (5th Cir. Jan. 21, 1980); *Hamilton v. General Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979). In this case, the appropriate statute is Ala. Code tit. 7, § 26 (1973), which provides for a limitations period of one year. *See* 42 U.S.C. § 1988 (1976); *Ingram v. Steven Robert Corp.*, 547 F.2d 1260 (5th Cir. 1977); *Boshell v. Alabama Mental Health Board*, 473 F.2d 1369 (5th Cir. 1973). The claim arising under § 1986 is governed by the one-year limitations period prescribed by that statute.

In support of her contention that the district court erred in holding that the claims under §§ 1981, 1983, 1985(3) and 1986 were time-barred, Appellant advances two arguments. First, Appellant seeks to prevent application of the statutes of limitations by invocation of the doctrine of continuing violation. Second, Appellant asserts that her reliance upon the EEOC's assumption of jurisdiction over her charge of discrimination and its failure to inform her that the Town would not be subject to suit under Title VII warrants application of the doctrine of equitable tolling.

While it is true that Appellant's complaint contains allegations of continuing discrimination, it is incumbent upon the court in a pretrial determination of the existence of jurisdiction to "analyze the specific claims of continuous discrimination to make sure that true continuous discrimination charges have been alleged." *Myles v. Schlesinger*, 436 F.Supp. 8, 14 (E.D.Pa. 1976) (as amended 1977). Apparently realizing that refusal to hire, like termination, has usually been viewed as a discrete event, triggering the running of the limitations period, Appellant argues that the facts of this case, where Ms. Dumas' name remains on the employment register of eligibles certified by the Personnel Board, from which list the Town is required to appoint, make it analogous to a failure to promote, which has more often been viewed as ongoing. *See, e. g., Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1222 (5th Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978), *quoting Rich v. Martin Marietta Corp.*, 522 F.2d 333, 348 (10th Cir. 1975) (distinguishing failure to hire, which takes place on a particular day from failure to promote, which arises during a lengthy period of time); *Jacobs v. Board of Regents*, 473 F.Supp. 663 (S.D.Fla.1979) (citing cases).

Case law on the subject of continuing violations has been aptly described as "inconsistent and confusing," both prior to and since the Supreme Court's decision in *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). *Elliott v. Sperry Rand Corp.*, 79 F.R.D. 580, 585 (D.Minn.1978). In *Evans*, the Court held that where plaintiff was wrongfully terminated in 1968 and rehired as a new employee in 1972, the fact that a nonretroactive seniority system, which was neutral in its operation, gave "present effect to a past act of discrimination" which was not made the basis for a timely charge, was not controlling since there was no present violation. *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889.

In *Elliott*, Judge Larson analyzed four situations or fact patterns where continuing violations are often alleged. In one of the fact patterns described, courts must determine which of several different events trigger the running of limitations where such events have occurred at different times and have involved the making of a single employment decision, such as an allegedly discriminatory failure to hire or promote. Some relevant considerations in this determination are when the discriminatee was told of the hiring or promotion decision and

whether others were hired or promoted subsequent to the discriminatee's application. Judge Larson concluded:

Although the "continuing violation" language may be used in this context, it seems that the courts are not really concerned with continuity so much as they are with practically assessing the employment situation from the lay person's viewpoint. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights, or when he should have perceived that discrimination was occurring.

*Elliott,* 79 F.R.D. at 585. We recently reiterated the rule that "[e]quitable considerations may very well require that the filing periods not begin to run until facts support-

ive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Hamilton v. General Motors Corp.,* 606 F.2d 576, 579 (5th Cir. 1979). *See also Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924 (5th Cir. 1975).

■ Applying this analysis, we conclude that Appellant's claim was properly dismissed since it affirmatively appears from Appellant's May 22, 1975, letter to the EEOC, which was appended to her complaint in the district court,[1] that she viewed the Town's decision not to fill the vacancy as a discriminatory refusal to hire her.[2]

■ Nor do we find merit in Ms. Dumas' contention that the statutes of limitations should be tolled because of her reliance on

1. This letter states as follows:

Dear Mrs. Falkowski:

As a supplement to my letter of May 20, 1975, with regard to my charges of racial discrimination relative to the status of the Mt. Vernon, Alabama, assistant clerk's position which was denied me, please be advised in the particular as stated in the following paragraph.

In a determined effort to deny me this position as the number one person on the eligible roster, the town of Mt. Vernon has decided not to fill the vacancy at this time. Town officials refused to say when they will fill the position in question.

I am hopeful that this brazen example of job bias and disregard of federal law and regulations will be promptly challenged by the Equal Employment Opportunity Commission.

2. Appellant places great reliance upon *Gates v. Georgia-Pacific Corp.,* 492 F.2d 292 (9th Cir. 1974), where the court stated that "the alleged unlawful employment practice is not complete until the position is filled and no longer available to the claimant." *Gates,* 492 F.2d at 294–95. In that case, Mrs. Gates applied and interviewed for a position on January 26, 1967, and heard nothing from the employer thereafter. The court found that the position sought was vacant on March 17, 1967, and was filled on March 28, 1967. Mrs. Gates did not learn that the position was filled until she reapplied on September 14, 1967. Mrs. Gates' complaint, filed with the EEOC on October 12, 1967, was held timely since it was filed within 210 days (as the Act then required) after the position had been filled. Appellant argues that since the position of Assistant Town Clerk sought by Ms. Dumas has never been filled, Appellant's claims should be deemed timely under *Gates,* despite Appellant's belief that the Town's deci-

sion not to fill the vacancy was a discriminatory refusal to hire her. We find no merit in this contention. The court in *Gates* did not have before it the issue of timeliness when the employer simply declines to fill the position (which is arguably tantamount to filling it with another, since it thereby becomes, for all practical purposes, unavailable to the claimant). The employer in *Gates* argued that the alleged unlawful employment practice occurred, if at all, when Mrs. Gates was interviewed for the position and submitted her application. There was no discussion in the case of the time at which she began to suspect discrimination. Since the complaint in *Gates* was timely whether the relevant date was that on which the position was filled or that on which the applicant learned it had been filled, the fact that the court based its decision on the earlier date is not contrary to the result here. (As indicative of the confusion one encounters in this area, we note that in one case where the appellant relied on *Gates* for the proposition that the discrimination asserted was continuing because the position sought remained unfilled, the court found *Gates* inapposite, stating "[i]n *Gates,* the date of discrimination was viewed as the date the position was filled because that was the first time the complainant was informed that she would not be hired." *Smith v. Office of Economic Opportunity for the State of Arkansas,* 538 F.2d 226, 229 n.1 (8th Cir. 1976). In *Smith,* the court stated that "the effects of the alleged discrimination were felt by the appellant [Smith] when he was denied employment and they terminated at that date. To predicate a finding of continuing discrimination on these facts would do violence to the policies underlying the limitations provisions of Title VII." *Id.* at 229.)

the EEOC's assumption of jurisdiction over the complaint and its failure to inform her that the Town and Mayor Simison were not subject to suit under Title VII. The statutes of limitations applicable to actions under §§ 1981, 1983, 1985(3) and 1986 are not tolled while an EEOC claim is pending. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Williams v. Phil Rich Fan Mfg. Co.,* 552 F.2d 596 (5th Cir. 1977) (applying no-tolling rule of *Johnson* retroactively). As the Court noted in *Johnson,* the petitioner slept on his rights since he could have filed his § 1981 action at any time after accrual of his cause of action and "the fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent." *Johnson,* 421 U.S. at 466, 95 S.Ct. at 1723.

## II. *Town's Employer Status Under Title VII*

 For purposes of Title VII, an "employer" is defined as "a person[3] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year,[4] and any agent of such a person . . .." 42 U.S.C. § 2000e(b) (1976). Regarding the number of persons

employed by the Town, the district court made the following findings of fact: in 1973, the Town employed twelve persons; in 1974, the Town employed thirteen persons; in 1975, the Town employed twenty-four persons, twelve of whom worked directly for the Town and twelve of whom were CETA employees; in 1976, the Town employed twenty-four persons, twelve of whom were CETA employees; and in 1977, the Town employed eighteen persons, eight of whom were CETA employees. *Dumas,* 436 F.Supp. at 870. Noting that the Town is clearly an "industry affecting commerce," the district court was of the opinion that it is the definition of employee—that is, whether CETA workers were to be counted as employees of the Town—and not the number of employees that is at issue in this case. *Id.* at 872. We disagree.[5] Although the district court made no finding with respect to the number of weeks worked by each of the persons whom the court found to be employed by the Town over the years, it appears from the Appellant's brief as well as from our own calculations, based upon answers to interrogatories listing the names and dates of employment of all persons employed with the Town since January 1, 1970, including CETA workers, that in none of the relevant years[6] did the town employ fifteen or more persons in at least twenty weeks.[7] According to Appellant's

3. "Person" is defined to include "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, or receivers." 42 U.S.C. § 2000e(a) (1976) (amended 1978).

4. The "current" year referred to in the statute is the year in which the alleged discrimination occurred. *See* B. Schlei & P. Grossman, *Employment Discrimination Law* 837 (1976).

5. The district court found that CETA workers are not selected, paid or controlled by the Town and held that they are not to be considered employees under § 2000e(b). While we do not reach the issue of whether CETA workers may be counted as employees of the persons for whom they work for purposes of determining whether the statutory definition of employer is met, we note that there was no evidence in the

record to support a finding of control or of lack of control.

6. Since Appellant met all of the filing time limits required to prosecute a Title VII claim based on the events of 1974 and 1975, (the last year in which the alleged discrimination occurred, for counting purposes as well as for limitations purposes), lodging her complaints with the EEOC well within 180 days of being told that someone else had been hired in 1974 and of being informed of the Town's decision not to fill the vacancy in 1975, 42 U.S.C. § 2000e–5(e) (1976), the relevant years for ·counting purposes are 1973, 1974 and 1975.

7. As described by Schlei and Grossman, to determine employer status under the Act, "one looks to each of the 'working days' within the calendar weeks reviewed to see whether there were 15 or more individuals who were on the payroll regardless of whether they were actually working full time or on any particular day."

brief, even when CETA employees and part-time employees, including a non-elected city judge and city attorney, are included in the count, "the number of weeks in which the Town employed 15 or more persons in each of the listed years are as follows:

> 1974–0
> 1975–15
> 1976–52
> 1977 (to 6/29/77)–14."

Because the Town does not meet the statutory definition of an employer for the years in question, even when CETA workers are counted, we need not reach the issue of whether CETA workers may be counted as employees for purposes of determining whether a party is an employer under Title VII.[8] Since the Town lacks employer status, and since Mayor Simison's liability is dependent upon that of the Town, dismissal of the Title VII claims against them for lack of subject matter jurisdiction was proper.[9]

### III. Title VII Claim Against the Personnel Board

Under 42 U.S.C. § 2000e–2(b) (1976), it is an unlawful employment practice for an employment agency, which the Personnel Board is under § 2000e(c),[10] to "fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion,

sex, or natural origin . . .." The district court dismissed Appellant's claim against the Personnel Board for failure to state a claim upon which relief could be granted, finding in her complaint no allegation of conduct which would amount to an unlawful employment practice under any part of § 2000e. Appellant alleged, however, that all defendants maintain racially discriminatory hiring practices, that each of the defendants decided and acted, separately and severally, not to fill the vacancy in order to avoid hiring a black person and that the Personnel Board and Town officials conspired to deprive Ms. Dumas of equal protection. Since a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), we think that dismissal of Appellant's Title VII claim against the Personnel Board was improper in this case.

AFFIRMED in part, REVERSED in part and REMANDED.

---

B. Schlei & P. Grossman, *Employment Discrimination Law*, 837–38 (1976). *See also Pascutoi v. Washburn-McReavy Mortuary, Inc.*, 11 FEP Cases 1325 (D.Minn.1975).

8. Likewise, we need not decide the question of the propriety of including in the count the city judge and city attorney, whose duties, it appears from the record, may require them to appear for work at the Town only twice a month.

9. Appellant argues that the "consolidation doctrine" or "single employer" standards developed by the NLRB in enforcing the National Labor Relations Act should be applied to integrate the Town of Mt. Vernon with the county or the state for purposes of calculating the number of employees for Title VII jurisdiction, citing *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389 (8th Cir. 1977). Those standards as as follows: (1) interrelation of operations; (2)

common management; (3) centralized control of labor relations; and (4) common ownership or financial control. *Baker*, 560 F.2d at 392. In *Baker*, the court concluded that two radio stations with joint ownership, overlapping management and centralized control of operations should be consolidated for purposes of determining employer status under § 2000e(b). *Id.* We decline to apply this theory to hold that the Town and the state or county, or all three, are a "single employer."

10. "Employment agency" is defined as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer and includes an agent of such a person." 42 U.S.C. § 2000e(c)(1976).