Ruby H. SMITH, Plaintiff,

v.

WYTHE-GRAYSON REGIONAL LI-
BRARY BOARD, James D. Bolt, Betty
Branscome, Laura Bryant, William
Reardon, Ronnie Sikes, E.L. Weinberg,
and Mark McGrath, Defendants.

Civ. A. No. 86-0244-R.

United States District Court,
W.D. Virginia,
Roanoke Division.

April 15, 1987.

L. Thompson Hanes, Fox, Wooten &
Hart, Roanoke, Va., for plaintiff.

Nate L. Adams, III, Hall, Monahan, En-
gle, Mahan & Mitchell, Winchester, Va., for
defendants.

## MEMORANDUM OPINION

KISER, District Judge.

### I. Introduction

A hearing was held on January 8, 1987,
for the purpose of addressing the Motion
for Summary Judgment filed on behalf of

Defendants in the above-captioned matter. This motion had been extensively briefed prior to the hearing and further briefs were submitted thereafter for the Court's consideration. Numerous exhibits and depositions were also filed. Upon review of the briefs, the entire record, and applicable case law and for the reasons discussed hereinafter, I have decided to grant Defendants' Motion for Summary Judgment on all federal claims and to dismiss the pendent state claims. Defendants' Counterclaim for costs and attorneys' fees is denied.

## II. Background

The Complaint in this case was originally filed on May 12, 1986, by Ruby H. Smith, Branch Librarian or Supervisor of the Wythe County Public Library in Wytheville, Virginia, from August of 1966 to early September of 1984. This county library is one of two libraries comprising the Wythe-Grayson Regional Library System and is under the direction of the Wythe-Grayson Regional Library Board. During the time period relevant to the disposition of this case, Mark McGrath was the Regional Director of this library system and, therefore, served as Smith's direct supervisor. Smith brought suit against the Board, its individual members, and McGrath.

Smith's original Complaint invoked the jurisdiction of this Court pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.* Not only did the Complaint purport to state an age discrimination claim, however, but it also alleged a violation of Smith's rights under the First Amendment of the United States Constitution. In addition, the Complaint enumerated certain state claims and invoked the Court's pendent jurisdiction to hear these.

An Amended Complaint was filed on September 15, 1986. It added a due process claim pursuant to 42 U.S.C. § 1983. The state claims in both complaints are essentially the same and listed the following causes of action: (1) breach of an employment contract, (2) breach of an implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, and (4) infringment of Smith's free speech rights under the Constitution of Virginia.

As will be seen from the recitation of the facts of this case, there is a dispute between the Plaintiff and Defendants over whether this is a demotion case or a termination case. There is no question that the relationship between Smith and McGrath gradually deteriorated from the time he became Regional Director in March of 1984 until Smith left her position as Branch Supervisor. It is also undisputed that the actual mechanical process that resulted in Smith's leaving her job on September 10, 1984, began four days earlier on September 6. At that time, McGrath handed Smith a note, the text of which is as follows:

> The position that you have been occupying as Branch Supervisor is now vacant. Effective today, you are being compensated at $5.50 per hour to do part-time clerical duty for about 25 hours each week. All benefits cease to accumulate today.
>
> If you accept this offer of probationary employment, you will have to make a strong effort to create a more harmonious atmosphere and to be *far* more constructively cooperative in your attitude toward your co-workers and the director. You must also increase the consistency and effectiveness of your performance.
>
> Let me know of your acceptance of this offer by signing below before noon on 10 Sept. 84.

Typed at the top of the letter were the words "Ruby Smith", and at the bottom of the letter was a blank line for her signature under which her name had been typed. At the top of the letter was the handwritten date "6 Sept. 84", and the letter was signed at the bottom left by Mark McGrath.

According to Smith's deposition testimony, she was not given the letter until around 4:00 P.M. She contends that McGrath told her he wanted to see her in the library meeting room and that once she was there he handed her the letter and said nothing. She further contends that in response to her question, "What have I

done?", McGrath said, "I am making some changes." Smith Dep. at 137. She then asked whether she could call Weinberg and Branscome, both members of the Regional Board, and received permission from McGrath to do so. Weinberg indicated that he had "heard that something was going on", and Branscome stated that she had missed some meetings and that she really was not familiar enough with the situation to discuss it. By the time those conversations ended, it was 4:30 and time for Smith to leave the library, which she did. *Id.* at 137–38. Smith has contended that she was terminated as of September 6. Nevertheless, she did return to the library four days later on Monday, September 10, and gave McGrath a letter rejecting the reassignment and asking that he clarify whether she had been terminated or demoted. That letter was written on Wythe County Public Library stationery, and under her signature, her name was typed, followed by the words "Wythe Supervisor". The text of that letter is as follows:

> The offer which you submitted to me on September 6 is rejected. I respectfully request that you advise me if I am being terminated or demoted and the specific reasons. As you know, under my contract, I am entitled to one month's notice.

> If I am demoted or terminated, I would like to be informed of my rights to proceed under the terms of the grievance proceedure [sic].

According to Smith's deposition testimony, when she hand delivered this letter to McGrath, she asked, "Where does this put us now?" McGrath's response was, "You are out. You do not work here anymore." Smith Dep. at 140. In addition, Smith contends that at the same time she requested that McGrath give her written reasons for her dismissal. She indicates that she waited while he went into the meeting room or went to use the typewriter and that finally he told her that he would mail the information to her. Smith had already put her belongings into her car, and she left the library sometime after noon. *Id.* at 140–41.

On the same day after Smith left, McGrath mailed a list of six items to her. The list was typed on the same sheet of paper but on a different typewriter from the letter that followed it. It appears undisputed that the list was not provided to Smith prior to the time she received it in the mail. McGrath testified in his deposition that he mailed it to her on September 10 and that he did not recall giving her a copy on September 6. In fact, in his deposition, he stated, "I think that I had prepared in case I was asked for it." McGrath Dep. at 41. The list was dated 6 September, 1984 and was captioned as "Areas not controlled successfully and 'done' uncooperatively." The following six items were included:

> Petty cash account
> Wytheville Office Supply account
> Main Line order
> Display for special books
> Overdues
> New schedules

The text of the letter, dated 10 September, 1984, from McGrath is as follows:

> Above are some of the areas that led to your demotion. If you decide to consider filing a grievance, you may inform me, by letter, of your wish to proceed as allowed in the policy manual.

> As you have rejected the employment offerred [sic], I will calculate the amount of leave time that you have accrued, according to your records. I will approach the Board to see if they will allow payment, even though you did not give the two weeks notice stipulated in the policy manual.

> Please return those keys you might have to the library before Wednesday.

It appears to this Court from the correspondence between Smith and McGrath that McGrath originally intended to demote Smith and that Smith realized that she was being demoted even though she asked whether she was being demoted or terminated.

On October 25, 1984, Smith and her husband met with McGrath unsuccessfully. In late November, a list of seventeen items was provided, supposedly as an expanded

version of the original six. On February 1, 1985, a letter from Board counsel to Plaintiff's counsel added two further complaints regarding Smith: "that she falsified reports concerning the operation of the library and was in general uncorporative [sic] with and antagonistic toward her superiors." Counsel have agreed that the grievance hearing ultimately scheduled for April 20, 1985 was not scheduled earlier due to various problems with their commitments. Thus, there are no allegations that the grievance hearing was unduly delayed by the Board. The original hearing was continued until May 16 so that Smith would have further opportunity to put on her version of the facts. By letter of May 22, 1985, Weinberg, one of the Defendants and Chairman of the Board, notified Smith's attorney that the Board had made the following determinations with respect to her grievance:

1. Mrs. Smith was reassigned, not fired as she claims.

2. By her note of September 10, 1984 rejecting the offer of a reasignment [sic], Mrs. Smith voluntarily left the employment of the library.

3. Mr. McGrath, the regional supervisor, had the authority to direct such demotion and reassignment as noted in the Regional Board's Personnel Policy Statement, as revised Jan. 25, 1984.

The letter concluded by stating that Smith's grievance and request for any relief was denied and that the matter was considered closed.

III. Discussion

■ At the hearing on Defendants' summary judgment motion, one of the first issues discussed was the age discrimination claim brought pursuant to the ADEA. There is no question that termination and demotion situations fall under the prohibitions of the ADEA. *See* 29 U.S.C. § 623(a). Furthermore, Smith, who was in her late 50s at the time of her demotion (or termination), falls within the protected age limits of the ADEA, i.e. individuals at least 40 but less than 70 years of age. *See* 29 U.S.C. § 631(a). The Library Board, however, fails to meet the definition of employer as set forth in 29 U.S.C. § 630(b), which requires that one be "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." At no time during the relevant time period did the Board employ as many as twenty individuals. The case of *Dumas v. Town of Mt. Vernon, Alabama,* 612 F.2d 974 (5th Cir.1980), was a Title VII race discrimination case in which the Court examined the definition of "employer" under 42 U.S.C. § 2000e(b). That language essentially tracks the definition of employer under the ADEA except that Title VII employers are required to employ fifteen or more employees rather than twenty. The *Dumas* court concluded that because the town had insufficient employees to meet the statutory definition of an employer that the Title VII claims had to be dismissed for lack of subject matter jurisdiction.

Because I have reached this conclusion on the status of the Library Board as an employer for ADEA purposes, I need not consider or address the further argument made by the Plaintiff that she should be excused from having filed her ADEA claim beyond the 180 day limit mandated by 29 U.S.C. § 626(d). In accordance with the foregoing discussion, Defendants' Motion for Summary Judgment with regard to the ADEA claim is granted.

Another federal claim of the Plaintiff, that her right to free speech pursuant to the First Amendment of the Constitution of the United States was violated by Defendants is likewise rather easily disposed of. Plaintiff's free speech claims were set forth in Count V of both her original and her amended complaint. That count also alleged a violation of the free speech provisions of the Virginia Constitution. At the hearing on Defendants' motion, I directed both counsel to the case that I consider most dispositive of this issue, that of *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Prior to its holding in *Connick,* the Supreme Court had already decided in the case of *Pickering v.*

Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), that public employees had the right to comment on matters of public interest. In *Connick*, the Court focused on whether an Assistant District Attorney could be discharged for preparing and circulating a questionnaire soliciting the opinions of her fellow staff members on such matters as office transfer policy, morale, the need for a grievance committee, the degree of confidence accorded superiors, and the existence of pressure to work in political campaigns.

In a 5–4 decision, the Court stated, "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. [footnote omitted]." *Id.*, 461 U.S. at 147–48, 103 S.Ct. at 1690. The Court concluded that although the question dealing with working in political campaigns was entitled to First Amendment protection as a matter of public concern, *id.* at 149, 103 S.Ct. at 1691, the remainder of the questionnaire represented an attempt on the part of Myers to "constitutionalize" issues that were of intra-office rather than public concern. *Id.* at 154, 103 S.Ct. at 1693. By reaching its decision, the Court did not conclude that speech on private matters enjoyed no protection, but rather stated, "We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147, 103 S.Ct. at 1690.

■ When Smith's allegations regarding violation of her First Amendment rights are scrutinized in light of the *Connick* and *Pickering* decisions, one must conclude that her speech cannot be fairly considered as addressing a matter of public concern. Certainly, none of the items provided to Smith by McGrath in the initial list he sent her had anything to do with speech or

freedom of expression. The same observation can be made with regard to the seventeen items on the expanded list provided by counsel for the Board on November 30, 1984. The only item arguably that could fall within ambit of protected speech would be Item 3, which made the following complaint: "Mrs. Smith was antagonistic towards efforts to obtain United Way funds for the Wythe County library." It appears that at a Library Board meeting, Mrs. Smith felt the amount being offered to the library system by the United Way was not adequate and hardly worth pursuing. I believe that this kind of statement in reality does not deal with a matter of public concern in that the public would probably have little or no interest, other than tangentially, in the exact amount of money that came to the library system through the United Way.

■ Any other free speech violations alleged by Smith simply cannot hold up in the current matter. As Defendants point out, during her deposition she indicated that she felt some of the action taken against her was as a result of her activities in 1974 when she gave an interview to a local newspaper about the Regional Library System and how Wythe County might be better aligned with counties other than Grayson County. There is absolutely no evidence that McGrath was aware of these activities or that he was in any way influenced by them, even if they were constitutionally protected under the "public concern" standard set forth in *Connick*. Any other speech such as Smith's contacts with other individuals regarding her problems with her superiors would certainly be matters of individual concern to her and not protected in the employment context. Accordingly, Defendants' Motion for Summary Judgment with regard to the First Amendment claim under the Constitution of the United States is granted.

■ With regard to Smith's remaining federal claim that her due process rights were violated, I observe initially that she appears to have received due process protections in excess of those to which she was entitled. I believe the cases of *Det-*

*weiler v. Va. Dept. of Rehabilitative Services,* 705 F.2d 557 (4th Cir.1983) and *Buschi v. Kirven,* 775 F.2d 1240 (4th Cir.1985) make it clear that under applicable law in the Fourth Circuit at the time Smith left her job as Branch Supervisor in September of 1984, she was not entitled to a pre-termination hearing.

I have serious doubts that Smith could show job entitlement or expectation of continued employment as Branch Supervisor that would amount to a property interest, and as the United States Court of Appeals for the Fourth Circuit recently noted, citing *Siu v. Johnson,* 748 F.2d 238, 244 (4th Cir.1984), "The process that is due in a particular circumstance is dependent upon the nature of the interest at issue." *Malcan v. Hall, et al,* No. 86–2104, slip op. at 3 (4th Cir.1987, [812 F.2d 1401 (Table)]) Yet, assuming *arguendo* that Smith had a constitutionally valid property interest in her position and that she was actually being terminated rather than demoted, she was accorded the opportunity for a pre-termination hearing essentially in compliance with that required by the holding of the United States Supreme Court in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The *Loudermill* Court concluded that an employee with a constitutionally protected property interest in continued employment was entitled to some type of hearing prior to termination. The hearing, however, could be an informal one wherein the individual would be given notice of the charges against him, an explanation of the charges and the evidence supporting them, and an opportunity to respond to the charges. As the Court noted, "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Id.* at 546, 105 S.Ct. at 1495.

Smith's meeting with McGrath on September 10, 1984, could have risen to the level of a *Loudermill* pre-termination hearing even though, as already mentioned, that case had not been decided at the time Smith left her library position. Smith's own deposition testimony shows that she was not much interested in conversing with McGrath but that she delivered to him personally a letter in which she requested *written* reasons for her dismissal from the Branch Supervisor position. She certainly had the opportunity, however, to discuss with McGrath why she was being removed, rather that leaving the library in the middle of the workday. It seems that she decided not to attempt any discussion, however, probably because of the personality conflict/hostility already in existence between the two of them. Moreover, McGrath was probably relieved to be able to communicate in writing rather than possibly to become embroiled in a verbal confrontation.

The note he had given Smith four days earlier certainly put her on notice that in her new clerical job she would be expected to be more cooperative, to perform more effectively and consistently, and to strive for a "more harmonious atmosphere." Logic dictates that Smith would have known that these areas were deemed to represent deficiencies in her performance as Branch Supervisor. Yet, she made no effort to respond. The list McGrath provided by mail filled in more specifics, as did the expanded lists presented well in advance of the grievance hearing. Smith has argued that these latter lists put her at an unfair disadvantage because they presented new charges against her and thus varied from the original list made by McGrath.

A similar argument was made and rejected by the Fourth Circuit in the recent case of *Rana v. United States,* 812 F.2d 887 (4th Cir.1987). Rana, the plaintiff, contended that his dismissal from a job with the U.S. Department of Defense stemmed from discrimination on the basis of age and national origin. Rana unsuccessfully urged that the trial judge's conclusions be set aside because trial testimony related to his work performance did not literally correspond to the specifics of the "notice of proposed removal" given him. Citing *Loudermill,* the Fourth Circuit Court affirmed the district court's conclusion that "while Rana had a protected property interest in his job, he received the only process to which he was due: a notice of proposed

removal, a chance to respond, and post-termination hearing." *Id.* at 890.

Another factor weighing heavily against Smith's due process claim in the present matter is that even though the circumstances surrounding her leaving the library system were considered of her own making, the Board provided her with a full-blown grievance hearing. Such a hearing was granted pursuant to § III. J. of the Personnel Policy adopted by the Wythe-Grayson Regional Library Board of Trustees on May 29, 1974. That section is entitled "Dismissal" and reads as follows:

> Any employee of the library may be discharged for insubordination, incompetence, unfaithfulness in the performance of his or her duties, willful neglect to conform to the rules and regulations of the library or physical inability to perform his or her duties. In every case, the employee will have the right to present his or her case to the Librarian and to the Board.

The exhibits show that the Board had no formal grievance procedure established at the time Ruby Smith left her position. Nevertheless, the Board expressed its willingness to extend to her the opportunity for an adversarial proceeding.

At the hearing on April 20, 1985, Smith was present with her attorney. Her attorney and counsel for the Board made opening statements and had the opportunity to present exhibits and to present, question, and cross-examine witnesses. A court reporter was present and prepared a transcript of the hearing, which lasted for more than three hours. The Board called Mark McGrath as a witness, and he was subjected to extensive cross-examination by Plaintiff's attorney. Plaintiff called three witnesses. The first was Valerie Kneer, Director of Appalachian Regional Library in North Carolina, who had had professional work experience as the supervisor of Mark McGrath. Kneer was able to testify to McGrath's shortcomings within her library system, but knew nothing of his dealings with Smith, although she stated that by reputation she had heard good reports about Mrs. Smith and her performance at the Wythe County Library. The second witness for Smith, Carolyn Wohlford, worked part-time for about five years at the Wythe library under the supervision of Smith. Wohlford testified to the positive aspects of Smith's job performance, although she admitted that she had no knowledge of certain aspects of Smith's duties. Wohlford further indicated that she had left her library employment before McGrath became Regional Director. The third witness was Joyce Roberts, Branch Supervisor at the Grayson Library in Independence, Virginia. Roberts had served as Acting Director immediately prior to the hiring of McGrath. In reality, Roberts' testimony reinforced some of the allegations made about Smith. Roberts testified that she suggested changes to make the Wythe County Library operate more efficiently, but that Mrs. Smith was resistent to implementing these changes. Roberts conceded that following the hiring of McGrath, she had no further direct contact with Smith.

At the close of the hearing, Plaintiff's counsel pointed out the fact that Smith had not been called to testify because of the time constraints and suggested that the Board remember that fact and perhaps later offer her an opportunity to appear before them. At that time, the response from the Board was that alternatively Smith could feel free to submit written answers to the complaints made about her. In response to requests from the Board that Plaintiff specify exactly what relief she was seeking, counsel indicated only that he wanted the Board to determine the validity of the complaints and to take what the Board deemed to be the necessary action based on its conclusions. At the next hearing date, May 16, 1985, Plaintiff was called as a witness and McGrath continued his testimony. As previously stated, the Board reached three decisions, the first of which was that Mrs. Smith was reassigned rather than fired and that when she voluntarily rejected that reassignment, she left the library of her own free will. Regardless of the Board's conclusions, there is no doubt in my mind, and the record fully substantiates, that Smith received far more

 

than the law requires in the way of due process under the circumstances of her particular situation. Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's due process claim is granted.

Because of the disposition I have made of the federal claims in this case, the pendent state claims shall also be dismissed in accordance with the decision of the United States Supreme Court in the landmark case of *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As the *Gibbs* Court stated, "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. [footnote omitted]." *Id.* at 726, 86 S.Ct. at 1139. The state claims asserted in the present matter are those best decided by a state tribunal.

■ A final matter to be decided relates to the Counterclaim filed by Defendants with their renewed Motion to Dismiss and Answer to the Amended Complaint on September 30, 1986. The Counterclaim asked for costs and attorneys' fees and alleges that Plaintiff was aware or should have been aware that Defendants were not "employers" within the meaning of the ADEA, and that, therefore, Plaintiff's continued pursuit of the age discrimination claim would be "frivolous, unreasonable, and/or without foundation" and for the purpose of harassing Defendants. I note, however, that it would take little in the way of discovery to find out whether the ADEA statutory definition of "employer" had been met. In fact, an affidavit of Joyce Roberts, together with copies of payroll reports, was submitted by Defendants to substantiate their contention that the Wythe-Grayson Regional Library Board was not an "employer" for ADEA purposes. Although Defendants' position may be technically correct that further pursuit of an ADEA claim would be improper, the age claim was for all practical purposes conceded by Plaintiff at the hearing on Defendants' Motion for Summary Judgment and I perceive that this is not an appropriate situation in which to grant costs and attorneys' fees.

IV.  Conclusion

In accordance with the foregoing discussion, the Motion for Summary Judgment filed on behalf of all Defendants is granted with regard to the federal claims, and the pendent claims are dismissed. Defendants' Counterclaim for costs and attorneys' fees is denied.