Tonya G. **RICHARDSON**, Plaintiff,

v.

**BEDFORD PLACE HOUSING PHASE I ASSOCIATES, et al., Defendants.**

Civ. A. No. 1:93–CV–1173–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 16, 1994.

Fred P. Anthony, Harmon, Smith, Bridges & Wilbanks and Michelle M. McDonough, Gilbert & Montlick, Atlanta, GA, for plaintiff.

Paul Arnold Howell, Jr. and Meryl C. Maneker, Pursley, Howell, Lowery & Meeks, Atlanta, GA, for defendants.

## *ORDER*

FORRESTER, District Judge.

This matter is before the court on Defendants Bedford Place Housing Phase I Associates, doing business as Parkway Plaza Apartments, RGR Management Corp., Earl A. Rhoden, and Simeon Golar's objections to Magistrate Judge Dougherty's order denying their motion to dismiss Plaintiff Tonya G. Richardson's sexual harassment and sex discrimination action. The Magistrate Judge entered an order on September 22, 1993, finding that contrary to Defendants' assertions, Defendants met the minimum number of employee requirements in order to invoke federal subject matter jurisdiction under Title VII, 42 U.S.C. § 2000e(b). He found that in determining the number of employees for purposes of jurisdiction, all regular part-time employees are counted, whether or not they work each day of the week. Defendants object and argue that either part-time employees do not count, or if part-time employees do count, it is only when they work a portion of each day of the work week. Defendants also contend that the Magistrate Judge exceeded his authority in entering an "order" on this matter rather than submitting a Report and Recommendation.

## I. MAGISTRATE JUDGE AUTHORITY

■ Federal statutes and civil rules provide a number of methods by which a district judge may refer a case to a magistrate judge.[1] This case was referred to the Magistrate Judge under 42 U.S.C. § 2000e–5(f)(5) and the court's Internal Operating Procedure Rule 920–2. Section 2000e–5(f)(5) provides that if a judge is unable to schedule a Title VII case for trial within 120 days after issue

1. An excellent enumeration of the various types of referrals under the Magistrate Judge's Act, 28 U.S.C. § 636, and *Federal Rule of Civil Procedure* 53 is found in *Brown v. Wesley's Quaker Maid, Inc.,* 771 F.2d 952, 954 (6th Cir.1985).

has been joined, he may appoint a special master to hear the case under *Fed.R.Civ.P.* 53. The undersigned, along with the other judges in the Northern District of Georgia, have made a determination that the Atlanta and Newnan Divisions' crowded dockets do not permit the trial of Title VII actions within the required 120 days. The collective solution to this problem is found in the court's Internal Operating Procedures Rule 920–2. *Parker v. Dole,* 668 F.Supp. 1563, 1564 (N.D.Ga.1987) (finding Rule 920–2 in compliance with Title VII, the Magistrate Judge's Act, and *Fed.R.Civ.P.* 53). Rule 920–2 provides, among other things, that Title VII cases brought in the Atlanta and Newnan Divisions "shall be referred at the time of filing to the full-time magistrates under the authority of 42 U.S.C. § 2000e–5(f), who shall, acting as special masters, hear and decide said cases in their entirety." A referral of a Title VII case under Rule 920–2 constitutes an express reference to the magistrate judge sitting as a special master pursuant to *Fed.R.Civ.P.* 53(f). A case may be referred even though no exceptional condition exists and the parties have not consented. *Brown v. Wesley's Quaker Maid, Inc.,* 771 F.2d 952, 954 (6th Cir.1985); *Spaulding v. University of Washington,* 740 F.2d 686, 695 (9th Cir.1984).

■ Magistrate Judge Dougherty's authority in this case, therefore, was governed by Rule 53. Rule 53 provides that absent limitations imposed by the district court, "the master has and shall exercise the power to regulate all proceedings in every hearing before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties under the order." Such power includes the authority to make proposed findings of facts and conclu-

sions of law on dispositive motions such as those to dismiss or for summary judgment. *Nebraska v. Wyoming,* —— U.S. ——, ——, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993); *Constant v. Advance Micro–Devices, Inc.,* 848 F.2d 1560, 1566 (Fed.Cir.1988); *In re Armco, Inc.,* 770 F.2d 103, 105 (8th Cir.1985). The Magistrate Judge, therefore, erred in issuing an "order" denying Defendants' motion to dismiss for lack of subject matter jurisdiction. Rather, he should have prepared a special master's report.[2] Given that the "order" has findings of fact and conclusions of law, however, this court can treat the "order" as a special master's report. Review of the Magistrate Judge's findings under this kind of reference is under a "clearly erroneous" standard. *Fed.R.Civ.P.* 53(e)(2); *Livas v. Teledyne Movible Offshore, Inc.,* 607 F.2d 118, 119 (5th Cir.1979).[3]

## II. TITLE VII JURISDICTION

■ For an employer to be subject to Title VII, the employer must be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and any agent of such person...." 42 U.S.C. § 2000e(b).[4] Bedford Place had two salaried employees and a number of hourly wage employees who worked five days a week. The record shows that the number of these "full-time" employees was fifteen or more for less than twenty weeks between January 1, 1992 and the end of 1993. During this period, however, Bedford Place employed a number of hourly wage employees who worked less than five days a week. If these "part-time" employees are counted for the purposes of section 2000e(b), then Bedford Place employed fifteen or more employ-

---

**2.** It might be argued that the Magistrate Judge had the inherent power under 28 U.S.C. § 636(b)(1)(A) to issue an "order" because a motion to dismiss for lack of subject matter jurisdiction is not listed specifically in the motions that a magistrate judge may not determine. Whether this prohibited list is exclusive or whether all motions to dismiss are included in the phrase, "to involuntarily dismiss an action," this court need not determine. Suffice it to say that the entry of an order on a dispositive motion raises Article III concerns.

**3.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, unless overruled by the Eleventh Circuit *en banc,* are binding precedent in this court. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

**4.** Until a 1972 amendment, this minimum number of employees was set at twenty-five. *See* Pub.L. No. 92–261 § 2(2)(b), 86 Stat. 103 (1972).

ees for more than twenty weeks during the preceding or current calendar years.

The courts that have construed section 2000e(b) and similar language under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 630(b), are divided on the meaning of this jurisdictional language.[5] A number of courts have relied on the proposition that Title VII is a remedial statute and should be liberally construed and, therefore, have found generally that part-time employees count toward the jurisdictional minimum as long as they were on the payroll and regardless of whether they worked on each day of the working week. *Cohen v. S.U.P.A., Inc.,* 814 F.Supp. 251 (N.D.N.Y.1993); *Vano v. Au,* 1992 WL 175498*2 (W.D.Va.1992); *Gorman v. North Pittsburgh Oral Surgery Associates,* 664 F.Supp. 212, 214 (W.D.Pa. 1987); *Lynn v. JER Corp.,* 573 F.Supp. 17, 19 (M.D.Tenn.1983); *Hornick v. Burrough of Duryea,* 507 F.Supp. 1091, 1098 (M.D.Pa. 1980); *Pedreya v. Cornell Prescription Pharmacies,* 465 F.Supp. 936, 940–41 (D.Colo.1979); *Pascutoi v. Washburn–McReavy Mortuary,* 1975 WL 3615 *2 (D.Minn.1975). Most of these cases rely at least in part on the reasoning of a First Circuit opinion and *dicta* found in a footnote in an old Fifth Circuit case. *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634 (1st Cir. 1983); *Dumas v. Town of Mt. Vernon, Ala.,* 612 F.2d 974, 979 n. 7 (5th Cir.1980).

In *Thurber,* the court relied particularly on comments of Senator Dirksen, who stated that the definition of employer was borrowed from the Unemployment Compensation Act. The court reasoned that since regulations promulgated under that Act counted employment for each day that an employment relationship existed, regardless of whether the employee reported for work each day, and since Title VII is to be construed broadly, then this definition was most appropriate. 717 F.2d at 634 (citing 26 U.S.C. § 3301 and Rev.Rule 55–19, Regulation 107, § 403.205 and Senator Dirksen's comments, 110 Cong.

Rec. 13087 (1964)). The fault in this reasoning, however, is that the term "employer" is defined far differently under the Unemployment Compensation Act than in Title VII or the ADEA. Section 3306(a)(1)(B) of Title 26, U.S.C., defines an employer as any person who "on each of some twenty days during the calendar year or during the preceding calendar year, each day being in a different calendar week, employed at least one individual in employment for some portion of the day." It is not surprising, therefore, that a regulation drafted under this statute found the mere existence of "an employment relationship" sufficient to render the person an employer. Senator Dirksen's assertions, however, are not borne out in the comparison of this language to that of Title VII. Had Congress intended to base the definition of employer on the Unemployment Compensation Act, it would have used far more similar language.

The *Thurber* court also cited district court opinions that relied on the statement in congressional debate "that the term employer is intended to have its common dictionary meaning and that employers with part-time or seasonal staffs were intended to be covered by the act when the number of employees exceeds the minimum figure." *Pedreya,* 465 F.Supp. at 941 (quoting 110 Cong.Rec. 7216–17 (1964)); *Hornick,* 507 F.Supp. at 1098 (quoting *Pedreya* ). This statement is not illuminating. Section 2000e(b) does not speak in terms of full-time versus part-time or seasonal workers. Thus, part-time or seasonal workers who worked "each working day" in a particular week could still be included under an interpretation contrary to that found by *Thurber.* Furthermore, had Congress actually intended a "common dictionary meaning" for the term "employer," it would have defined the term in the broad manner found in dictionary definitions of the term. *Cf. Webster's Third New International Dictionary* 743 (1981) ("the owner of an enterprise ... that employs personnel for wages or salaries"); *Black's Law Dictionary*

---

5. ADEA § 603(b) provides: "The term 'employer' means a person engaged in an industry affecting commerce who has *twenty* or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year...." (Emphasis added). Given the similar language and nature of these statutes, this court finds case law construing the meaning of such language equally persuasive whether directed towards Title VII or ADEA. *Hyland v. New Haven Radiology Associates, P.C.,* 794 F.2d 793, 796 (2d Cir.1986).

618 (4th ed. 1968) ("one who employs the services of others; one for whom employees work and who pays their wages or salaries").

In *Dumas,* the old Fifth Circuit did not decide the meaning of § 2000e(b). 612 F.2d at 979. The lower court had found that the defendant municipality had employed only nine full-time employees, an undisclosed number of part-time employees who "did not work every day" and did not have an employer-employee relationship with other workers under the Community Educational Training Assistance (CETA) program. *Dumas v. Town of Mt. Vernon,* 436 F.Supp. 866, 872 (S.D.Ala.1977). The appeals court found it unnecessary to define § 2000e(b) because it found that even if the CETA and part-time workers were counted, the threshold of fifteen required in the statute would not have been reached. *Dumas,* 612 F.2d at 980. In a footnote, however, the court referred to a treatise wherein it was stated that "one looks to each of the 'working days' within the calendar weeks reviewed to see whether there were fifteen or more individuals who were on the payroll, regardless of whether they were actually working full time or on any particular day." *Id.* at 979 n. 7 (citing to B. Schlei & P. Grossman, *Employment Discrimination Law,* 837 (1976)). The edition of the treatise cited by the court in *Dumas* relied on the decision in *Pascutoi v. Washburn–McReavy Mortuary, Inc.,* 1975 WL 3615*2 (D.Minn.1975), that found the remedial nature of Title VII and "this day of changing work conditions and habits" a sufficient basis to hold that an employee must not work every day of the work week in order to be counted under Title VII.[6] Given the lack of

examination of the language in the statute or discussion on the reason for the interpretation found in the treatise in the *Dumas* decision, this court cannot find the *dicta* particularly persuasive either.[7]

In disagreement with the above-discussed authority are courts finding the language to require the employee to have actually been at work each day of the working week for a minimum of twenty weeks in order for the employer to be subject to federal jurisdiction. *EEOC v. Garden and Associates, Ltd.,* 956 F.2d 842, 844 (8th Cir.1992); *McGraw v. Warren County Oil Co.,* 707 F.2d 990, 991 (8th Cir.1983); *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 354 (7th Cir. 1983);[8] *Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32, 35 (D.Me.1992); *Norman v. Levy,* 756 F.Supp. 1060, 1064 (N.D.Ill.1990). These cases rely on the words "for each working day" and find little guidance from the legislative history of Title VII.

This court generally must agree with these courts. A plain reading of the language of section 2000e(b) can yield only the conclusion that an employee is counted only in the weeks in which he worked every day of the work week. Any other interpretation would render the words "for each working day" superfluous. The legislative history both in committee and floor debate does not explain how or why a minimum number of employees was selected in 1964. Furthermore, the debate surrounding the amendment to the section reducing the number from twenty-five to fifteen in 1972 centers only on the assertion that the reduction will lead to more employers being covered, discrimination being re-

**6.** Subsequent editions of this treatise cite to the *Pedreya, Hornick, Thurber* and *Dumas* opinions. Another oft-cited treatise, relied on by the *Thurber* court, also relies on *Pascutoi* in summarily reading the same conclusion on the meaning of section 2000e(b)'s "for each working day" language. 717 F.2d at 634 (citing 2 Larson, *Employment Discrimination,* § 5.32, (1973)). Both treatises, however, provide no analysis themselves regarding the true meaning of this language.

**7.** The EEOC relies particularly on *Thurber* and *Dumas* in taking the position that employees are counted regardless of whether they work less than each day of the working week. EEOC Policy Statement No. 915–052 (April 20, 1990).

It is not surprising that the administrative agency in charge of enforcement of Title VII would choose the most expansive reading of its jurisdiction. The Policy Statement, however, adds no additional analysis on the meaning of the section.

**8.** The Seventh Circuit in *Zimmerman* made a distinction between hourly and salary employees. While a presumption that a salary employee works each day of the working week may be appropriate, the language itself does not necessarily lend itself to such a reading. Such a distinction, however, between hourly or salary employees is unnecessary for this court to consider since the employees at issue were paid hourly wages.

duced and whether such a change might overload court dockets. Congress could have applied Title VII to all businesses affecting interstate commerce. Instead, whether a product of political compromise or an explicit recognition that small economic enterprises cannot bear the regulation and risk of liability under Title VII, a strict threshold was set. This area of Title VII, therefore, is not one where the language can be read for maximum inclusion. A literal interpretation of the language thus is more appropriate.

Such a reading, furthermore, is not inflexible. No false dividing line between part-time and full-time employees is made. Rather, reading the language as written, the question is whether the employee worked every day of the working week. Moreover, the fact that some small businesses will avoid Title VII jurisdiction who would not under a more generous interpretation is not troublesome. After all, Congress recognized that there must be a limit to the use of Title VII to combat discrimination. Today, many Title VII cases that this court considers do not survive the pleading stage and result in a judgment in favor of the defendant. Nonetheless, the cost of success on a motion to dismiss or motion for summary judgment runs into the tens of thousands of dollars. For small economic enterprises, such outlays threaten financial viability.

This court, therefore, declines to follow the First Circuit and instead chooses to follow that portion of the Seventh and Eighth Circuits' holdings that read this statute as written. The jurisdictional minimum number of employees required under Title VII, therefore, has not been met.[9]

## III. CONCLUSION

In light of the foregoing discussion, this court finds as follows: The Magistrate Judge's Report and Recommendation is REJECTED [11–1]. Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is GRANTED [6–1]. The court

9. This court need not reach the issue left unaddressed by the Magistrate Judge of whether Defendants RGR Management, Earl A. Rhoden and Simeon Golar are employers or agents under Title VII and therefore come within employer

additionally declines to exercise jurisdiction over the pendent state claims under 28 U.S.C. § 1367(c)(3). The Clerk of Court is DIRECTED to DISMISS this action.

SO ORDERED.

liability. *See Deal v. State Farm County and Mutual Ins. Co. of Texas*, 5 F.3d 117, 119 (5th Cir.1993); *York v. Tennessee Crushed Stone Association*, 684 F.2d 360, 362 (6th Cir.1982).